**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

MIREILLE MESIAS,

                          Plaintiff,

             v.

CRAVATH, SWAINE & MOORE LLP,

                          Defendant.

Case No. 14-cv-7070 (PAC)

---

## MEMORANDUM IN SUPPORT OF DEFENDANT'S
## MOTION TO DISMISS PLAINTIFF'S COMPLAINT

Stuart W. Gold
Rachel G. Skaistis
Lauren R. Kennedy
CRAVATH, SWAINE & MOORE LLP
825 Eighth Avenue
New York, NY 10019
(212) 474-1000

*Defendant pro se*

December 15, 2014

**TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ................................................................................ ii

PRELIMINARY STATEMENT ..........................................................................1

THE ALLEGATIONS OF THE COMPLAINT ....................................................3

PROCEDURAL BACKGROUND .......................................................................6

ARGUMENT .......................................................................................................7

I.      The Complaint Fails To Allege Unlawful Discrimination Under Federal Law. ................7

      A.      The Complaint Does Not Raise an Inference of National Origin Discrimination. ..........................................................................9

      B.      The Complaint Does Not Raise an Inference of Age or Gender Discrimination. ........................................................................14

      C.      The Complaint Offers a Legitimate, Non-Discriminatory Basis for Plaintiff's Termination. ................................................17

      D.      The Complaint Does Not Plead a Hostile Work Environment ............................18

II.      The Complaint Fails To Allege Unlawful Discrimination Under State or City Law. ......................................................................22

      A.      The Complaint Does Not State a Claim Under the NYSHRL. ...........................22

      B.      The Complaint Does Not State a Claim Under the NYCHRL. ...........................23

III.      Dismissal of the Complaint Should Be with Prejudice. ...............................................25

CONCLUSION ...................................................................................................26

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

<u>Acosta v. City of New York</u>, No. 11 Civ. 856 (KBF), 2012 WL 1506954 (S.D.N.Y.
  Apr. 26, 2012) .......................................................................................................... 17, 23, 24

<u>Ahmed v. Gateway Grp. One</u>, No. 12 Civ. 0524 (BMC), 2012 WL 1980386 (E.D.N.Y.
  June 1, 2012) ................................................................................................................. 10, 11

<u>Alfano v. Costello</u>, 294 F.3d 365 (2d Cir. 2002) ................................................................. passim

<u>Almontaser v. N.Y.C. Dep't of Educ.</u>, No. 13 CV 5621 (ILG), 2014 WL 3110019
  (E.D.N.Y. July 8, 2014) ............................................................................................. 20

<u>Ardigo v. J. Christopher Capital, LLC</u>, No. 12 Civ. 3627 (JMF), 2013 WL 1195117
  (S.D.N.Y. Mar. 25, 2013) ........................................................................................... 20

<u>Ashcroft v. Iqbal</u>, 556 U.S. 662 (2009) .............................................................................. 7, 9

<u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544 (2007) ...................................................... 11, 24

<u>Brown v. Henderson</u>, 257 F.3d 246 (2d Cir. 2001) ........................................................... 7, 18

<u>Carter v. Cornell Univ.</u>, 976 F. Supp. 224 (S.D.N.Y. 1997), <u>aff'd</u>, 159 F.3d 1345 (2d Cir.
  1998) ........................................................................................................................... 21

<u>Das v. Consol. Sch. Dist. of New Britain</u>, 369 Fed. App'x 186 (2d Cir. 2010) ................ 20

<u>De La Peña v. Metro. Life Ins. Co.</u>, 953 F. Supp. 2d 393 (E.D.N.Y. 2013) .................... 10, 11, 16

<u>Delgado v. Triborough Bridge & Tunnel Auth.</u>, 485 F. Supp. 2d 453 (S.D.N.Y. 2007) .............. 12

<u>DiGirolamo v. MetLife Grp., Inc.</u>, 494 Fed. App'x 120 (2d Cir. 2012) ........................................ 8

<u>Edwards v. Jericho Union Free Sch. Dist.</u>, No. 11-CV-3261 (DRH), 2014 WL 5463625
  (E.D.N.Y. Oct. 29, 2014) ............................................................................................ 21

<u>Gorman v. Consol. Edison Corp.</u>, 488 F.3d 586 (2d Cir. 2007) ..................................................... 3

<u>Grant v. Rochester City Sch. Dist.</u>, No. 10-CV-6384, 2013 WL 3105536 (W.D.N.Y.
  June 18, 2013) ............................................................................................................. 16

<u>Green v. Dist. Council 1707</u>, No. 13 Civ. 8671 (PAE), 2014 WL 3734101 (S.D.N.Y.
  July 29, 2014) .............................................................................................................. 12

<u>Harris v. Forklift Sys., Inc.</u>, 510 U.S. 17 (1993) ...................................................................... 19

Harris v. Mills, 572 F.3d 66 (2d Cir. 2009).................................................................7

Henry v. N.Y.C. Health & Hosp. Corp., 18 F. Supp. 3d. 396 (S.D.N.Y. 2014)................ 8, 12, 24

Ivanov v. N.Y.C. Transit Auth., No. 13 Civ. 4280 (PKC), 2014 WL 2600230 (S.D.N.Y.
   June 5, 2014).........................................................................................................24

Jackson v. Syracuse Newspapers, No. 5:10-CV-01362 (NAM/DEP), 2013 WL 5423711
   (N.D.N.Y. Sept. 26, 2013).....................................................................................14

Jowers v. Family Dollar Stores, Inc., No. 09 Civ. 2620 (WHP), 2010 WL 3528978
   (S.D.N.Y. Aug. 16, 2010), aff'd, 455 Fed. App'x 100 (2d Cir. 2012)....................16

Kajoshaj v. N.Y.C. Dep't of Educ., 543 Fed. App'x 11 (2d Cir. 2013) ...................9, 11

Lawless v. TWC Media Solutions. Inc., 487 Fed. App'x 613 (2d Cir. 2012)........................15, 24

Lawtone-Bowles v. N.Y.C. Dep't of Sanitation, No. 13 Civ. 1433 (JGK), 2014 WL
   2429070 (S.D.N.Y. May 30, 2014) .......................................................................8

Martinez v. City of New York, 338 Fed. App'x 71 (2d Cir. 2009)...............................17

Mazur v. N.Y.C. Dep't of Educ., No. 12 Civ. 0687 (AT), 2014 WL 4651943 (S.D.N.Y.
   Oct. 24, 2014) .......................................................................................................23

McJunkin v. Suffolk Co. Civil Serv., No. 13-CV-5045 (JS) (WDW), 2014 WL 3490720
   (E.D.N.Y. July 10, 2014)......................................................................................17

Neishlos v. City of New York, No. 00 Civ. 914 SAS, 2003 WL 22480043 (S.D.N.Y.
   Nov. 3, 2003) .........................................................................................................9, 10

Obinabo v. RadioShack Corp., 522 Fed. App'x 55 (2d Cir. 2013) .............................15

Rosner v. Star Gas Partners, L.P., 344 Fed. App'x 642 (2d Cir. 2009)......................25

Ruiz v. Cnty. of Rockland, 609 F.3d 486 (2d Cir. 2010)............................................14

Sethi v. Narod, 12 F. Supp. 3d 505 (E.D.N.Y. 2014) ...............................................15

Smith v. HBO, No. 12-CV-2177 (MKB), 2013 WL 2285185 (E.D.N.Y. May 22, 2013)............19

Smith v. Johnson, No. 14-cv-3975 (KBF), 2014 WL 5410054 (S.D.N.Y. Oct. 24, 2014)...........22

Sosa v. Medstaff, Inc., No. 12 Civ. 8926 (NRB), 2013 WL 6569913 (S.D.N.Y. Dec. 13,
   2013).......................................................................................................................20, 23

Stembridge v. City of New York, 88 F. Supp. 2d 276 (S.D.N.Y. 2000) .....................20

Tarshis v. Riese Org., 66 Fed. App'x 238 (2d Cir. 2003)..........................................22

Thompson v. ABVI Goodwill Servs., No. 12-CV-6212 CJS, 2013 WL 505491
    (W.D.N.Y. Feb. 8, 2013) ........................................................................................16

Tsang-Adler v. City of New York, No. 12 CV 394 (SJ) (MDG), 2013 WL 1563337
    (E.D.N.Y. Apr. 12, 2013) ............................................................................ 9, 10, 11

Univ. of Tex. Southwestern Med. Cntr. v. Nassar, 133 S. Ct. 2517 (2013)...................................8

Wesleyan Methodist Church of Canisteo v. Village of Canisteo, 792 F. Supp. 2d 667
    (W.D.N.Y. 2011)......................................................................................25

Zuk v. Onondaga Cnty., 471 Fed. App'x 70 (2d Cir. 2012) ........................................................12

**Federal Statutes & Rules**

Age Discrimination in Employment Act of 1967 ................................................................passim

Federal Rule of Civil Procedure 12(b)(6)......................................................................1

Federal Rule of Civil Procedure 11.............................................................................25

Title VII of the Civil Rights Act of 1964 ...................................................................passim

**State & City Statutes**

New York City Administrative Code, Title 8, §§ 8-101 et seq...........................................passim

New York State Executive Law, Article 15, §§ 290 et seq........................................ 3, 22, 23, 24

Defendant Cravath, Swaine & Moore LLP ("Cravath" or the "Firm") submits this memorandum of law in support of its motion to dismiss Plaintiff Mireille Mesias's Complaint, dated August 27, 2014 (the "Complaint"), pursuant to Federal Rule of Civil Procedure 12(b)(6).

## PRELIMINARY STATEMENT

Plaintiff was a 42-year-old Haitian woman when she was hired in 1997 as a Word Processing Specialist in the Firm's Document Processing Facility ("DPF" or the "Facility") by the very supervisor she charges with discrimination.  Plaintiff worked in the Facility for this supervisor for her entire sixteen-year tenure at Cravath, until she was ultimately discharged from the Firm in 2013.  The Complaint offers absolutely no explanation (much less a "plausible" explanation) for why, more than six years after he hired her, this supervisor suddenly began discriminating against Plaintiff based on her age, gender and national origin, or why, if this supervisor were intent on discharging Plaintiff for discriminatory reasons, it took him nearly a decade to do so.

Rather than attempt to answer these threshold questions, the Complaint contains a litany of grievances that do not even pretend to make reference to a protected characteristic. Plaintiff labels certain disciplinary warnings and performance evaluations she received as "wrongful", "false[]" and "unjustified", and complains that she was not originally awarded a bonus (which she admits ultimately to receiving).  The Complaint never states, however, that these warnings were issued or the bonus delayed "because of" a protected characteristic; and the Complaint certainly does not reasonably imply as much.  To the contrary, the Complaint specifically offers other, non-discriminatory explanations for the challenged behavior—namely, that malfunctioning computer software created the illusion that Plaintiff failed to perform her duties satisfactorily, and other employees may have been annoyed with Plaintiff for complaining

about distribution of work assignments. Nothing in the Complaint supports a contrary inference of discrimination based on a protected characteristic.

The Complaint seeks to connect Plaintiff's termination from Cravath to unlawful national origin discrimination by alleging that Plaintiff was Cravath's "only" Haitian Word Processing Specialist and claiming that Plaintiff was treated less favorably than her "non-Haitian" colleagues. However, the Complaint offers nothing to suggest that Plaintiff's status as Cravath's "only" Haitian Word Processing Specialist was anything other than coincidence, and the Complaint fails to plead facts supporting the existence of even a single "similarly situated" colleague who was treated more favorably than Plaintiff. Under these circumstances, the Complaint does not adequately plead that Plaintiff was terminated "because of" her national origin.

The Complaint attempts to link Plaintiff's discharge from Cravath to unlawful age and/or gender discrimination by pointing to two alleged comments (during the entire 10-year period at issue) supposedly made by Plaintiff's supervisor about "menopausal women". But these comments are totally disconnected in both timing and context from Plaintiff's discharge from Cravath. Therefore, even assuming the comments were made, they cannot support a plausible inference of age and/or gender discrimination.

Plaintiff's efforts to prevail on a hostile work environment theory are equally unavailing: apart from lacking the necessary causal connection, none of the incidents described in the Complaint—either alone or taken together—rises to the level of "severe" or "pervasive" misconduct necessary to establish a hostile work environment. At most, the Complaint describes the sort of petty slights and trivial inconveniences that are not actionable. Moreover, these acts

are the very sort of isolated and episodic incidents that do not establish a hostile work environment absent extraordinary severity, which is decidedly missing here.

For all these reasons, the Complaint fails to state a claim for discrimination based on national origin, age and/or gender under federal, state or city law and, therefore, must be dismissed. Given that Plaintiff was already offered—and declined—the opportunity to amend the Complaint, such dismissal should be with prejudice.

## THE ALLEGATIONS OF THE COMPLAINT[1]

The Complaint alleges that Plaintiff "has been subjected to adverse employment actions, a hostile work environment, and/or an atmosphere of adverse employment actions due to her gender and/or national origin" in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), Article 15 of the New York State Executive Law ("NYSHRL"), and Title 8 of the New York City Administrative Code ("NYCHRL") (Complaint ¶ 28), and also that she "has been subjected to adverse actions, a hostile work environment, and/or an atmosphere of adverse employment actions due to her age" in violation of the Age Discrimination in Employment Act of 1967 ("ADEA"), the NYSHRL and the NYCHRL (id. ¶ 29). Very few of the allegations in the 30-paragraph complaint, however, even reference a protected characteristic.

With regard to her claim of national origin discrimination, Plaintiff alleges that she "was the only one of her similarly situated colleagues who was Haitian" (id. ¶ 8); that she was "falsely accused" of making an error on a log-card "generated by another, non-Haitian employee" (id. ¶ 24); that she received a written warning for not following Facility protocol, while "non-Haitian, similarly situated colleges who had not committed similar alleged errors,

---

[1] While the Court must accept the factual allegations in the Complaint as true for purposes of this motion, see Gorman v. Consol. Edison Corp., 488 F.3d 586, 591-92 (2d Cir. 2007), Cravath categorically denies Plaintiff's allegations of discrimination.

were not reprimanded in any way" (id. ¶ 23); and that she received less-favorable treatment related to vacation scheduling than "a non-Haitian colleague" (id. ¶ 13).  With regards to the lattermost incident, Plaintiff contends that she "requested to borrow two vacation days from the coming New Year"; a "non-Haitian colleague's request to do the same had previously been approved"; and Plaintiff's supervisor "denied [Plaintiff's] request, thus treating her in a disparate manner as compared to her non-Haitian colleague".  (Id.)  The Complaint contains no factual amplification concerning this (or any other) "non-Haitian colleague".

With respect to her claim of age and/or gender discrimination, the Complaint states that Plaintiff overheard her supervisor make two comments about "menopausal women". (See id. ¶¶ 18, 24.)  On one occasion—roughly two years before Plaintiff was terminated[2]— Plaintiff overheard her supervisor say, "[T]his is the last time I'm working with menopausal women!"  (Id. ¶ 18.)  On a second occasion—approximately a year-and-a-half after the first comment, and more than three months before Plaintiff was terminated[3]—Plaintiff overheard her supervisor say, "in sum and substance, that he was tired of working with 'menopausal women'". (Id. ¶ 24.)  The Complaint offers nothing else to link Plaintiff's termination to unlawful age or gender discrimination.

The rest of Plaintiff's Complaint is comprised of generic and conclusory allegations that do not provide a connection between a protected characteristic and Plaintiff's discharge from Cravath.  Plaintiff, who began working at Cravath in March 1997 (at a time when she was already 42 years old) (id. ¶¶ 7-8), alleges that in November 2003 her supervisor issued her a written warning for failing to communicate a piece of information that Plaintiff had, in fact,

---

[2] Plaintiff overheard the first comment "[t]oward the end of 2011".  (Id. ¶ 18.)  Plaintiff was not terminated until October 3, 2013.  (Id. ¶ 26.)

[3] Plaintiff overheard the second comment "[o]n June 27, 2013".  (Id. ¶ 24.)

communicated (id. ¶ 11).[4]  This incident was used "to justify a 'Partially Meets Standard' rating for one component" of Plaintiff's 2003 year-end review.  (Id. ¶ 12.)  More than two years later, in 2006, Plaintiff's supervisor issued Plaintiff a written warning "related to . . . computer issues" Plaintiff was experiencing.  (Id. ¶ 14.)  These issues—"including several important job-related applications malfunctioning or not working properly"—"creat[ed] the illusion that [Plaintiff] was derelict in fulfilling her job duties".  (Id.)[5]  Although Plaintiff informed her supervisor of these troubles, her supervisor told another Cravath employee that Plaintiff had not done so and issued Plaintiff a less-than-perfect 2007 year-end review.  (Id. ¶¶ 14, 15.)  The Complaint refers to this conduct as "unabated discriminatory treatment" and claims that it led Plaintiff to join Cravath's "Employment Assistance Program ('EAP')" at the end of 2007.  (Id. ¶ 15.)[6]

For approximately two years following her entrance into EAP, Plaintiff's supervisor "generally left [Plaintiff] alone", until November 2010, when Plaintiff wrote to an assistant supervisor "complain[ing] about how distribution of work assignments unfairly affected [her]".  (Id. ¶¶ 16-17.)  After Plaintiff contacted the assistant supervisor, "the scrutiny leveled against [Plaintiff] and her performance increased".  (Id. ¶ 17.)

Then, in December 2011, "Cravath failed to reward [Plaintiff] an Attendance Incentive Bonus, despite the fact that she met the requirements for the bonus".  (Id. ¶ 19.)[7]

---

[4] The Complaint is silent as to the happenings between Plaintiff and her supervisor between 1997 (the time he hired her) and November 2003.

[5] The Complaint does not allege that anyone at Cravath refused to help Plaintiff resolve her computer troubles.  To the contrary, the Complaint acknowledges that Cravath made "fixes" to address Plaintiff's problems, but states that the solutions were "temporary" and the "problems would soon resurface".  (Id. ¶¶ 14, 15.)

[6] EAP—which stands for "Employee Assistance Program"—is a confidential counseling service that Cravath offers to its employees via an outside firm.

[7] The bonus—actually called "Bonus Personal Days"—rewards employees who schedule time-off in advance (rather than "calling out" at the last minute) with extra vacation days.

Plaintiff complained about "this oversight" to her supervisor, who told Plaintiff "that there was nothing he could do about it". (Id.) Another Cravath employee—the departmental record keeper—was able to help Plaintiff resolve the issue, "thus showing that [Plaintiff's supervisor] willfully refused to help [Plaintiff], even though he was able". (Id.) The Complaint does not allege that Plaintiff's supervisor had the authority to award or deny Bonus Personal Days or to fix record-keeping errors that caused an improper denial of such days. (Nor does the Complaint allege that Plaintiff's supervisor caused any record-keeping error that may have led to an erroneous denial of Plaintiff's bonus.)

Plaintiff subsequently received a "wrongful performance evaluation" in May 2012. (Id. ¶ 20.) The Complaint blames "numerous computer-related problems affecting [Plaintiff's] ability to do her job" for the poor review. (Id.) Plaintiff was then "wrongfully put on probation for one minor error" approximately five months later, in October 2012. (Id. ¶ 21.) More than six months later (after her probation had ended), Plaintiff received an "unjustified written warning". (Id. ¶¶ 22-23.) In June 2013, Plaintiff's supervisor "falsely accused [Plaintiff] of making an error" (id. ¶ 24), and in September, he "accused [her] of failing to revise a document" that Plaintiff had, in fact, revised (id. ¶ 25). Plaintiff was terminated in October 2013. (Id. ¶ 26.)

## PROCEDURAL BACKGROUND

Plaintiff filed a complaint with the New York State Division of Human Rights in April 2014. That complaint was dismissed for administrative convenience in May 2014, before Cravath had an opportunity to respond. Plaintiff filed the instant complaint on September 2, 2014. By letter dated November 3, 2014, Cravath indicated an intent to move to dismiss the Complaint. The parties participated in a pre-motion conference before this Court on

November 18, 2014.  At that conference, the Court gave counsel for Plaintiff an opportunity to amend the Complaint, but counsel declined the Court's invitation.[8]

## ARGUMENT

### I.      The Complaint Fails To Allege Unlawful Discrimination Under Federal Law.

In compliance with established Supreme Court precedent, courts in this Circuit "apply a 'plausibility standard'" when reviewing the allegations contained in a complaint.  Harris v. Mills, 572 F.3d 66, 71-72 (2d Cir. 2009).  That standard is "guided by two working principles".  Id. at 72 (alteration and internal quotation marks omitted).  First, "although 'a court must accept as true all of the allegations contained in a complaint,' that 'tenant' 'is inapplicable to legal conclusions,' and 'threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice'".  Id. (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (alteration omitted)).  Second, "only a complaint that states a plausible claim for relief survives a motion to dismiss"; this second "working principle" involves "a context-specific" inquiry that "requires the reviewing court to draw on its judicial experience and common sense".  Harris, 572 F.3d at 72 (quoting Iqbal, 556 U.S. at 679 (internal quotation marks omitted)).

Here, the Complaint must be dismissed because it fails to raise a plausible inference that Plaintiff was discharged from Cravath "because of" a protected characteristic.  This deficiency is fatal to all Plaintiff's discrimination claims.  See Brown v. Henderson, 257 F.3d 246, 252 (2d Cir. 2001) ("It is axiomatic that mistreatment at work, whether through subjection to a hostile work environment or through such concrete deprivations as being fired or

_____

[8] The Court specifically asked counsel for Plaintiff:  "[D]o you want to amend your pleading now that [counsel for Defendant] has told you what he has indicated?  He thinks your complaint is inadequate."  (November 18, 2014 Pre-Motion Conference Transcript ("Tr.") 2:22-24.) Plaintiff's counsel stated his belief that there was nothing that needed to be amended.  (Tr. 2:25-3:1.)  The Court cautioned that it would not allow amendment after the fact (Tr. 3:2-19), and counsel for Plaintiff said, "That's fine, your Honor.  I understand" (Tr. 3:20).

being denied a promotion, is actionable under Title VII only when it occurs because of [a]

protected characteristic."); DiGirolamo v. MetLife Grp., Inc., 494 Fed. App'x 120, 122 (2d Cir.

2012) (holding that "[i]n order to make out a claim under the ADEA, appellant must demonstrate

. . . that age discrimination was the 'but-for' cause of the alleged adverse employment action",

and granting defendant's motion for summary judgment where plaintiff did "not proffer[]

evidence beyond conclusory allegations or unsubstantiated speculation . . . as to whether

[defendant's] alleged age-based discriminatory animus was the 'but-for' cause—or, indeed, any

cause at all—of his demotion and firing" (quotation marks omitted)); see also Henry v. N.Y.C.

Health & Hosp. Corp., 18 F. Supp. 3d 396, 407 (S.D.N.Y. 2014) (stating that "[t]he law in this

Circuit is clear that the 'sine qua non' of a Title VII discrimination claim is that the

discrimination must be because of a protected characteristic" and dismissing complaint where

plaintiff "fail[ed] to allege facts plausib[ly] indicating that any conduct rising to the level of an

adverse employment action was because of race or gender" (internal quotation marks and

alteration omitted)); Lawtone-Bowles v. N.Y.C. Dep't of Sanitation, No. 13 Civ. 1433 (JGK),

2014 WL 2429070, at *5-6 (S.D.N.Y. May 30, 2014) (stating, "[T]o plead a claim of age

discrimination under the ADEA, the plaintiff must allege sufficient facts to support a plausible

inference that she suffered an adverse employment action because of her age" and dismissing

plaintiff's ADEA claim because plaintiff "fail[ed] to allege any facts supporting an inference of

adverse employment action due to her membership in this protected class").[9]  Nothing in

Plaintiff's Complaint raises the necessary causal inference.

---

[9] Because discriminatory animus is required by both Title VII and the ADEA, Plaintiff's
federal discrimination claims are discussed collectively below.  It is worth noting, however, that
the ADEA has a heightened causation requirement, see, e.g., Univ. of Tex. S.W. Med. Ctr. v.
Nassar, 133 S. Ct. 2517, 2523, 2526-27 (2013) (recognizing that status-based discrimination
under Title VII requires plaintiff to demonstrate that a protected characteristic was "a motivating

A.    **The Complaint Does Not Raise an Inference of National Origin Discrimination.**

None of the allegations contained in the Complaint plausibly suggests that Plaintiff was terminated "because of" her national origin.  The Complaint states that Plaintiff "was the only one of her similarly situated colleagues who was Haitian" (Complaint ¶ 8), and avers that Plaintiff received less favorable treatment related to vacation scheduling and an "error related to a log card" than an unidentified, un-described "non-Haitian" colleague (id. ¶¶ 13, 24). These allegations—even when coupled with the other allegations in the Complaint that do not specifically reference Plaintiff's national origin (see supra pp. 4-6)—do not state a claim for unlawful discrimination.

That Plaintiff may have been the "only" Haitian Word Processing Specialist at Cravath is insufficient to raise a plausible inference of discrimination.  "Where a Complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief."  Kajoshaj v. N.Y.C. Dep't of Educ., 543 Fed. App'x 11, 13 (2d Cir. 2013) (quoting Iqbal, 556 U.S. at 678).  A plaintiff's status as "the only" member of her protected class at defendant-employer—absent something additional suggesting that this was more than mere "coincidence", see Neishlos v. City of New York, No. 00 Civ. 914 SAS, 2003 WL 22480043, at *7 (S.D.N.Y. Nov. 3, 2003)—is insufficient to render a discrimination claim "plausible" as opposed to merely "possible".  See, e.g., Tsang-Adler v. City of New York, No. 12 CV 394 (SJ) (MDG), 2013 WL 1563337, at *3 (E.D.N.Y.

---

factor" for an adverse employment action, but the ADEA requires "but-for" causation), making Plaintiff's allegation that she was terminated in violation of the ADEA especially tenuous.

Apr. 12, 2013); Ahmed v. Gateway Grp. One, No. 12 Civ. 0524 (BMC), 2012 WL 1980386,

at *2 (E.D.N.Y. June 1, 2012).[10]

        Here, Plaintiff has offered nothing more than general allegations that she was

treated "unfairly" (see supra pp. 4-6), combined with the mere coincidence that she was

Cravath's "only" Haitian Word Processing Specialist at a particular point in time.  This fact is

not enough to salvage the Complaint's national origin-neutral allegations and take Plaintiff's

discrimination claim across the line from possible to plausible.  See, e.g., Tsang-Adler., 2013

WL 1563337, at *1-3 (dismissing plaintiff's complaint alleging unlawful discrimination where

plaintiff alleged "[s]he was the only person of Asian descent" in her unit and "that she was the

only employee verbally harassed and humiliated by defendants and falsely accused of not

performing her duties and responsibilities" because, "[a]s oppressive as Plaintiff may believe her

work environment to have been, she has not stated a plausible claim that her negative

experiences are tied to violations of the federal anti-discrimination statutes she invoked"); De La

Peña v. Metro. Life Ins. Co., 953 F. Supp. 2d 393, 403, 413 (E.D.N.Y. 2013) (dismissing

plaintiff's complaint alleging national origin discrimination and commenting, "[M]erely

acknowledging a stereotype which may have negative connotations"—that "Filipinos were heavy

beer drinkers"—"combined with the alleged facts that the [p]laintiff was the only Filipino in the

office and had experienced different forms of treatment than his coworkers, still does not make

the [p]laintiff's claim sufficiently plausible"); Neishlos, 2003 WL 22480043, at *6-7 (granting

defendant summary judgment on plaintiff's unlawful discrimination claim where plaintiff alleged

---

    [10] Indeed, were that allegation sufficient, plaintiffs in under-represented protected classes
could plausibly state a claim for discrimination any time they were terminated.  Courts in this
Circuit have not adopted such a far-reaching and misguided rule.  See, e.g., Ahmed, 2012 WL
1980386, at *2 ("Of course the law does not require employers to hire a token employee from
each ethnicity group present in the employer's community. . . .  In a city as diverse as Queens, no
meaning can be drawn from the fact that [defendant] has hired only one Bangladeshi woman".).

he was "subjected . . . to ridicule" and "point[ed] out that he was the only Criminalist of Russian Jewish descent, but . . . presented no evidence to show that this was anything but coincidence") (quotation marks omitted); Ahmed, 2012 WL 1980386, at *2 ("[P]laintiff's race and sex discrimination claims are premised on one fact:  plaintiff was the only Bangladeshi woman working as a taxi dispatcher for [defendant].  This is insufficient to raise her discrimination claims 'above the speculative level,' as required by Twombly.").

Plaintiff's allegation that she was wrongly reprimanded for a document generated by a non-Haitian colleague (Complaint ¶ 24) is simply another way of saying that Plaintiff was treated unfairly and was the only Haitian Word Processing Specialist at Cravath.  This factual allegation thus falls short for the reason just provided:  while it may be consistent with unlawful discrimination, it does not render Plaintiff's claim of discrimination "plausible" as opposed to merely "possible".  See, e.g., Kajoshaj, 543 Fed. App'x at 13; Tsang-Adler., 2013 WL 1563337, at *1-3; De La Peña, 953 F. Supp. 2d 393 at 413.

Likewise insufficient is Plaintiff's conclusory allegation of disparate treatment rooted in her supervisor's denial of Plaintiff's vacation scheduling request.  (Complaint ¶ 13.) The Complaint avers that "a non-Haitian colleague" told Plaintiff that "borrowing vacation days was standard practice"; Plaintiff requested to "borrow" vacation days and was denied; and the "non-Haitian colleague's" prior request to do the same had been granted.  (Id.)  This fact pattern might raise a plausible inference of discrimination if Plaintiff adequately pleaded facts supporting that the "non-Haitian colleague" permitted to "borrow" vacation days was similarly situated to Plaintiff in all material respects.  Plaintiff, however, has not even tried to make that showing.  This shortcoming is fatal to her attempt to prove discrimination through disparate treatment.

"Where a plaintiff seeks to derive an inference of discrimination from allegations of disparate treatment, he or she must plausibly allege the existence of at least one comparator who was more favorably treated despite being similarly situated to plaintiff in all material respects . . . ." Green v. Dist. Council 1707, No. 13 Civ. 8671 (PAE), 2014 WL 3734101, at *5 (S.D.N.Y. July 29, 2014) (internal quotation marks omitted); see also Zuk v. Onondaga Cnty., 471 Fed. App'x 70, 71 (2d Cir. 2012) ("[I]n order to raise an inference of discrimination by showing that he was subjected to disparate treatment, . . . the plaintiff must show he was similarly situated in all material respects to the individuals with whom he seeks to compare himself." (alterations and internal quotation marks omitted)).  "Plausibly" alleging the existence of a "similarly situated" colleague involves more than baldly declaring as much:  "to demonstrate that employees not in her protected group were favored, [a plaintiff] must plead facts showing she was similarly situated in all material respects to the individuals with whom she seeks to compare herself". Delgado v. Triborough Bridge & Tunnel Auth., 485 F. Supp. 2d 453, 463 (S.D.N.Y. 2007) (dismissing plaintiff's complaint for failing to state a claim under Title VII, notwithstanding allegations that within her department "a white employee received a new computer monitor before her, and that several white employees had been promoted while several minority employees had not") (emphasis added).  For example, the complaint must allege that the comparator and plaintiff held similar positions, were in the same department, and/or worked for the same supervisor.  See Green, 2014 WL 3734101, at *5-6 (dismissing plaintiff's allegations of disparate treatment related to "Employee A" where the complaint did "not supply any basis on which to assess whether Employee A [wa]s an apt comparator for [plaintiff].  It [did] not allege that the two occupied similar positions . . . , worked in the same group, or even reported directly to the same supervisor"); see also Henry, 18 F. Supp. 3d at 408 (dismissing

complaint alleging disparate treatment based on race, where plaintiff "fail[ed] to describe who the[ comparators] are, what their responsibilities were, how their workplace conduct compared to [plaintiff's], or how they were treated", and finding, "Without factual amplification, the generic allegation of disparate treatment related to an unspecified class of Caucasian persons is simply not sufficient to nudge [plaintiff's] claims across the line from conceivable to plausible" (alterations and quotation marks omitted)).

   Here, the Complaint never states—even in conclusory terms—that Plaintiff was "similarly situated" to the "non-Haitian colleague" previously permitted to "borrow" vacation days.  Moreover, the Complaint is utterly devoid of the factual allegations courts in this Circuit routinely find necessary to plead disparate treatment.  For example, the Complaint does not state whether Plaintiff's "non-Haitian colleague" also worked in the Document Processing Facility; if he/she did, whether this colleague worked in the same DPF group; whether this colleague reported to the same supervisor as Plaintiff; whether this colleague held the same or similar position in the Facility as Plaintiff; whether this colleague requested an accommodation at the same time of year as Plaintiff or at a time when the Document Processing Facility (if, in fact, this colleague worked in that department) was equally busy or had comparable employee coverage; or whether this colleague and Plaintiff had similar disciplinary records and/or experience at Cravath, which would justify similar accommodations being made on their behalf.  Given this serious deficiency in the Complaint, Plaintiff has utterly failed to raise an inference of unlawful national origin discrimination through a disparate treatment theory.[11]

---

[11] For this same reason, the allegations contained in Paragraph 23 of the Complaint—if, in fact, Plaintiff intends that paragraph to support a claim of national origin discrimination—do not sufficiently plead disparate treatment.  Paragraph 23 alleges that Plaintiff received an "unjustified written warning", while "non-Haitian similarly situated colleges who had not committed similar alleged errors, were not reprimanded in any way, let alone issued a written

**B.      The Complaint Does Not Raise an Inference of Age or Gender Discrimination.**

Nothing in Plaintiff's Complaint supports the plausible inference that Plaintiff was discharged from Cravath because of her age and/or gender.  The Complaint's two factual allegations touching upon these protected characteristics—two comments purportedly made by Plaintiff's supervisor—are nothing more than classic stray remarks, which are not probative of discriminatory animus.  The rest of the Complaint is silent as to Plaintiff's age and/or gender.

The Complaint asserts that—in the entire ten-year period at issue—Plaintiff overheard her supervisor make two inappropriate comments about "menopausal women". (Complaint ¶¶ 18, 24.)  First, "[t]owards the end of 2011"—approximately two years before her termination in October 2013 (id. ¶ 26)—Plaintiff overheard her supervisor say, "[T]his is the last time I'm working with menopausal women!" (id. ¶ 18).  Second, roughly a year-and-a-half later (and more than three months before Plaintiff's October 2013 termination), Plaintiff overheard her supervisor say, "in sum and substance, that he was tired of working with 'menopausal women'". (Id. ¶ 24.)  The Complaint does not draw a direct connection between these alleged comments and Plaintiff's subsequent discharge from Cravath.  For example, Plaintiff does not allege that these comments were referenced during her termination meeting.  Nor do these

---

warning".  In other words, the Complaint explicitly acknowledges that the employees referenced in this paragraph were not similarly situated to Plaintiff (because they "had not committed similar alleged errors").  See Ruiz v. Cnty. of Rockland, 609 F.3d 486, 493-95 (2d Cir. 2010) (holding that "[a]n employee is similarly situated to co-employees if they were[, among other things,] engaged in comparable conduct" and granting defendant's motion for summary judgment because plaintiff did "not identif[y] a similarly situated employee who faced equally serious allegations" and, therefore, "failed to raise an inference of discrimination"); Jackson v. Syracuse Newspapers, No. 5:10-CV-01362 (NAM/DEP), 2013 WL 5423711, at *15 (N.D.N.Y. Sept. 26, 2013) (finding that alleged comparators were not similarly situated to Plaintiff where "none of these employees made the same errors plaintiff made in this case").  Moreover, even read more favorably for Plaintiff than drafted, there are no specific facts demonstrating that the other employees referenced in this paragraph were, in fact, "similarly situated".

comments, when coupled with the other allegations contained in the Complaint (see supra pp. 3-6), raise a plausible inference that Plaintiff was terminated "because of" her age and/or gender.

Whether comments are probative of discriminatory animus or constitute non-probative "stray remarks" depends on "who made the remark, when the remark was made in relation to the employment decision, the remark's content, and the context in which the remark was made". Obinabo v. RadioShack Corp., 522 Fed. App'x 55, 57 (2d Cir. 2013) (decided under Connecticut law, but citing and applying federal precedent); see also Sethi v. Narod, 12 F. Supp. 3d 505, 539 (E.D.N.Y. 2014). Relevant here, comments that are "temporally remote from and unrelated to [a termination] decision" "are not evidence of discriminatory discharge". Lawless v. TWC Media Solutions. Inc., 487 Fed. App'x 613, 616 (2d Cir. 2012); see also Sethi, 12 F. Supp. 3d at 543 ("Where remarks are unrelated to a decision taken with respect to a plaintiff, they are not probative of discriminatory intent."). "Only where decision-makers repeatedly make comments that draw a direct link between a plaintiff's membership in a protected class and an adverse employment action can an inference of discriminatory animus be drawn." Jowers v. Family Dollar Stores, Inc., No. 09 Civ. 2620 (WHP), 2010 WL 3528978, at *3 (S.D.N.Y. Aug. 16, 2010) (quotation marks omitted), aff'd, 455 Fed. App'x 100 (2d Cir. 2012).

While "[t]here is no bright line rule regarding the length of time that renders an allegedly discriminatory remark too attenuated to constitute evidence of discrimination", "[d]istrict courts in this Circuit have found that a three-month lapse between alleged discriminatory statements and an adverse employment action is too long a gap to find the remark probative of discrimination". Sethi, 12 F. Supp. 3d at 540-41, 543-44 (collecting cases and holding that "discriminatory remarks"—including, "you f[**]king Indian"—made "three months prior to [p]laintiff's suspension, in a context unrelated to the[] employment decision[]" were "not

probative of discriminatory animus" and "not . . . sufficient evidence to establish an inference of discrimination"); see also Jowers, 2010 WL 3528978, at *1, *3 (holding that the comment "black people are lazy and incompetent" was "insufficient to establish an inference of discrimination" where comment was made at least three weeks before plaintiff's termination); De La Peña, 953 F. Supp. 2d at 404, 413 (holding that "politically incorrect" statement that "Filipinos are heavy beer drinkers. Are you?" was "a 'stray remark' which does not constitute sufficient evidence to state a case for employment discrimination" where the comment was "far removed in time" from and bore "a tangential relationship to the [p]laintiff's ultimate discharge"); Thompson v. ABVI Goodwill Servs., No. 12-CV-6212 CJS, 2013 WL 505491, at *5-6 (W.D.N.Y. Feb. 8, 2013) (finding supervisor's comment "made twenty months before [p]laintiff's employment was terminated" not probative of discriminatory animus where court could "not find any plausible nexus between the comment and the termination of [p]laintiff's employment"); Grant v. Rochester City Sch. Dist., No. 10-CV-6384, 2013 WL 3105536, at *3, *6 (W.D.N.Y. June 18, 2013) (holding that four alleged remarks made by supervisor were, "at best, . . . stray remarks which are insufficient to support a claim of discrimination" and commenting, "It is well resolved that isolated derogatory remarks by a decision-maker alone do not rise to an inference of discrimination" (internal quotation marks omitted)).

       Here, the timing and context of Plaintiff's supervisor's alleged comments make it clear that they were, at most, classic stray remarks that are not probative of discriminatory animus. These comments were made over a year apart and were totally divorced from and outside the context of Plaintiff's termination.

## C.     The Complaint Offers a Legitimate, Non-Discriminatory Basis for Plaintiff's Termination.

Not only does the Complaint fail adequately to allege that Plaintiff was terminated "because of" a protected characteristic, the factual allegations contained therein actually raise the opposite inference—that Plaintiff was terminated for non-protected reasons.  In such situations, courts in this Circuit have not hesitated to dismiss a plaintiff's complaint.  See, e.g., Acosta v. City of New York, No. 11 Civ. 856 (KBF), 2012 WL 1506954, at *5 (S.D.N.Y. Apr. 26, 2012) (dismissing complaint that contained another, non-discriminatory explanation for the allegedly discriminatory treatment—namely, that plaintiff refused to lie to protect his colleagues); McJunkin v. Suffolk Cnty. Civil Serv., No. 13-CV-5045 (JS) (WDW), 2014 WL 3490720, at *4 (E.D.N.Y. July 10, 2014) (granting motion to dismiss where plaintiff "allege[d] no facts actually connecting [protected] qualities to [d]efendants' actions" but did allege other, non-discriminatory explanations for defendants' actions, including that defendant's employees had "personal ill feelings" towards plaintiff); see also Martinez v. City of New York, 338 Fed. App'x 71, 73 (2d Cir. 2009) ("The complaint acknowledged the [d]efendants' non-discriminatory reason for the adverse action [that plaintiff had a confrontation with his supervisor] and failed to allege facts which, if proved, would establish that this reason for the penalty was pretextual, and that the action was, in fact, taken due to a discriminatory animus.").

Plaintiff admits that, during her exit interview, Cravath explained that Plaintiff's "continued errors were the reason for her dismissal".  (Complaint ¶ 26.)  The Complaint further acknowledges (more than once) that "issues with the computer at [Plaintiff's] work station . . . creat[ed] the illusion that [Plaintiff] was derelict in fulfilling her job duties".  (Id. ¶ 14; see also id. ¶ 20 (alleging that, in response to a "wrongful performance evaluation", Plaintiff "highlighted the numerous computer-related problems affecting [her] ability to do her job"), ¶ 26

(alleging that, during her exit interview, "[Plaintiff] reminded [her supervisor] of all the computer problems that had plagued her throughout the last several years").)[12]  The Complaint also suggests that other employees may have been inclined to be critical of Plaintiff and her work product because they were annoyed with Plaintiff for complaining to an assistant supervisor about the unfair distribution of work assignments, leading to "the scrutiny leveled against [Plaintiff] and her performance [being] increased".  (Id. ¶ 17.)[13]

Particularly in light of the deficiencies in the Complaint identified above (see Sections I.A-B), the Complaint raises only one plausible inference:  at most, Plaintiff was terminated because malfunctioning computer software left the impression that Plaintiff was making mistakes that were not fairly attributable to her, and other employees (who were annoyed with Plaintiff), were more than willing to see the worst in Plaintiff.  While this might be "unjust", it is not actionable discrimination under Title VII or the ADEA.  See Brown, 257 F.3d at 252.

### D.    The Complaint Does Not Plead a Hostile Work Environment.

Nor can the Complaint succeed on a hostile work environment theory.  Not only has Plaintiff failed to raise the necessary causal inference (see supra pp. 3-6 and Section I.A-C),[14]

---

[12] The Complaint never suggests that these computer problems somehow stemmed from someone's discriminatory animus towards Plaintiff or that anyone at Cravath refused to resolve these computer problems because of such animus.  To the contrary, the Complaint specifically acknowledges that Cravath took steps to resolve Plaintiff's computer problems, but those troubles proved to be recurring.  (Complaint ¶¶ 14-15.)

[13] Notably, the Complaint does not allege a single action taken against Plaintiff— "unjustified" or otherwise—during her entire probationary period.  (See Complaint ¶¶ 21-23.)  If Cravath employees were truly "out to get" Plaintiff (for discriminatory or any other reasons), surely they would have issued Plaintiff the "unjustified" and "false[]" reprimands during—rather than after—this critical period.  (See id. ¶¶ 23-25.)  That this did not occur further reduces any plausible inference of discrimination.

[14] See, e.g., Alfano v. Costello, 294 F.3d 365, 374 (2d Cir. 2002) ("[I]t is 'axiomatic' that in order to establish a . . . hostile work environment under Title VII, a plaintiff must demonstrate that the conduct occurred because of [a protected characteristic].").

but Plaintiff has not alleged anything—in either pervasiveness or severity—that resembles a hostile work environment.

      "A hostile work environment claim requires a showing . . . that the harassment was sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment."  Alfano v. Costello, 294 F.3d 365, 373 (2d Cir. 2002) (internal quotation marks omitted).  To this end, a "plaintiff must show that the workplace was so severely permeated with discriminatory intimidation, ridicule, and insult that the terms and conditions of her employment were thereby altered".  Id.  This test has a purely "objective" component:  "the misconduct shown must be severe or pervasive enough to create an objectively hostile or abusive work environment".  Id. at 374 (internal quotation marks omitted).

      When it comes to pleading the requisite severity or pervasiveness, "[a]s a general rule, incidents must be more than episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive"; and "[i]solated acts, unless very serious, do not meet the threshold of severity or pervasiveness".  Id. (internal quotation marks omitted).  Equally insufficient are incidents of "[s]imple teasing" or "offhand comments".  Smith v. HBO, No. 12-CV-2177 (MKB), 2013 WL 2285185, at *3 (E.D.N.Y. May 22, 2013); see also Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993) ("[M]ere utterance of an . . . epithet which engenders offensive feelings in an employee does not sufficiently affect the conditions of employment to implicate Title VII." (internal quotation marks and citation omitted; ellipsis in original)).  Simply put, "a plaintiff alleging a hostile work environment must demonstrate either that a single incident was extraordinarily severe, or that a series of incidents were sufficiently continuous and concerted to have altered the conditions of her working environment".  Alfano, 294 F.3d at 374 (internal quotation marks omitted).  The instant Complaint alleges neither.

As a preliminary matter, nothing alleged in the Complaint is severe enough to relieve Plaintiff of the need to show more than isolated or episodic misconduct.  See Alfano, 294 F.3d at 380-81; see also Almontaser v. N.Y.C. Dep't of Educ., No. 13 CV 5621 (ILG), 2014 WL 3110019, at *8 (E.D.N.Y. July 8, 2014) (finding that "frequent[]" remarks to plaintiff that "you're too old" and questions about when plaintiff was planning to retire were "not sufficiently severe to satisfy the objective prong of the hostile work environment analysis"); Das v. Consol. Sch. Dist. of New Britain, 369 Fed. App'x 186, 190 (2d Cir. 2010) ("[Plaintiff's] allegations of episodic, isolated incidents of ethnically- or racially-motivated student-on-teacher harassment, spread over the three years of her employment with [defendant], [we]re not sufficiently severe . . . in character to constitute a hostile work environment.").

Nor are the comments—two from the same individual over the 10-year period at issue—sufficiently pervasive to state a hostile work environment claim.  See Sosa v. Medstaff, Inc., No. 12 Civ. 8926 (NRB), 2013 WL 6569913, at *6 (S.D.N.Y. Dec. 13, 2013) ("[T]wo comments certainly do not qualify as 'pervasive.'  . . . If two comments from a single source were considered 'pervasive', it would render the statutory requirement meaningless."); see also Ardigo v. J. Christopher Capital, LLC, No. 12 Civ. 3627 (JMF), 2013 WL 1195117, at *4-5 (S.D.N.Y. Mar. 25, 2013) ("At most, . . . the Amended Complaint alleges that, over a period of several months, [plaintiff] overheard three mildly offensive comments [that defendant's owner 'only hire[d] gay men because they [we]re productive and [he] trust[ed] them' (said on two separate occasions) and 'Oh, are you going to introduce me to another gay guy?!']. Even considering these allegations cumulatively, . . . this is not sufficient . . . to state a plausible hostile work environment claim."); Stembridge v. City of New York, 88 F. Supp. 2d 276, 279-80, 286 (S.D.N.Y. 2000) ("Overall, seven instances over three years [including the comments

that plaintiff was 'different from other minorities in the office', reference to African American youths as 'animals', that an African American mayor was a 'washroom attendant', that plaintiff was an 'uppity n[***]er', reference to plaintiff as 'boy', and hanging an African-American doll near plaintiff's workstation] does not create a work environment permeated with racial hostility. Plaintiff has simply failed to present evidence to support a finding that his workplace was objectively abusive and hostile." (internal citation omitted)); Carter v. Cornell Univ., 976 F. Supp. 224, 228-29, 232 (S.D.N.Y. 1997), aff'd, 159 F.3d 1345 (2d Cir. 1998) ("Plaintiff has failed to prove that the environment in which she was working was discriminatorily hostile or abusive.  While in no way condoning defendant['s] disparaging comments on the issue of race [for example, that 'Rodney King would not have been beaten had he not run from the police'; that defendant 'did not think that Rev. Martin Luther King, Jr. deserved a national holiday'; that 'the black employees in the duplicating division . . . celebrated the day that the O.J. Simpson verdict was announced'; and that defendant said he 'once refused to board an elevator with three 'rough looking' black men on it and that he could not hire a black nanny for his daughter'], they do not in themselves constitute a 'hostile' or 'abusive' environment because there were at most six such comments, and they were made over a period of years.").

Even liberally counting all incidents alleged in the Complaint (including those that bear absolutely no connection to a protected characteristic[15]), Plaintiff has alleged

---

[15] These facially-neutral incidents need not—in fact, should not—be considered by the Court as part of Plaintiff's hostile work environment claim, because Plaintiff has failed to link these allegedly hostile actions to a protected characteristic.  See, e.g., Alfano, 294 F.3d at 378 ("Facially neutral incidents may be included, of course, among the 'totality of the circumstances' that courts consider in any hostile work environment claim, so long as a reasonable fact-finder could conclude that they were, in fact, based on sex."); Edwards v. Jericho Union Free Sch. Dist., No. 11-CV-3261 (DRH), 2014 WL 5463625, at *7 (E.D.N.Y. Oct. 29, 2014) ("While facially neutral circumstances may be considered as part of the totality of the circumstances, a

approximately twelve incidents of unwarranted criticism or unfair treatment over the course of a

decade.  Given the comparatively mild nature of the incidents alleged (two inappropriate

comments, denial of a vacation request, delayed issuance of extra vacation days, and a handful of

"unjustified" performance evaluations and disciplinary warnings over a period of ten years),

Plaintiff's allegations fall well short of describing a hostile work environment.  See Alfano, 294

F.3d at 370, 376-77 (concluding that "the twelve incidents [over a period of approximately four

years] cited by [plaintiff], taken together, are insufficient as a matter of law to meet the threshold

of severity of pervasiveness required for a hostile work environment", particularly where several

of the incidents were facially neutral and others did not even support an inference of

mistreatment).

## II.     The Complaint Fails To Allege Unlawful Discrimination Under State or City Law.

For the same reasons provided above, the Complaint fails to state a claim for

discrimination under either state or city law and, accordingly, Plaintiff's NYSHRL and

NYCHRL claims must also be dismissed.

### A.     The Complaint Does Not State a Claim Under the NYSHRL.

Discrimination claims brought under the NYSHRL are analyzed under the same

standards applied in the ADEA and Title VII context.  See, e.g., Tarshis v. Riese Org., 66 Fed.

App'x 238, 240 (2d Cir. 2003); Smith v. Johnson, No. 14-cv-3975 (KBF), 2014 WL 5410054,

at *3 (S.D.N.Y. Oct. 24, 2014).  Therefore, for the same reasons provided above (see supra

Section I), Plaintiff's discrimination claims brought under the NYSHRL must also be dismissed.

See Tarshis, 66 Fed. App'x at 240 (affirming district court's grant of summary judgment in favor

of defendant on plaintiff's NYSHRL claims "because the federal [Title VII and ADEA] and state

---

plaintiff must provide some basis from which a jury could rationally infer that these race-neutral
actions were discriminatory.").

claims share the same standard of proof"); see also Acosta, 2012 WL 1506954, at *5-6, *7-8 (dismissing discrimination and hostile work environment claims brought under the NYSHRL along with plaintiff's federal discrimination claims).

**B.    The Complaint Does Not State a Claim Under the NYCHRL.**

Plaintiff's claims also fail under the more-liberal NYCHRL, which likewise (1) requires that actionable misconduct be "because of" a protected characteristic and (2) covers conduct of sufficient severity only.

Although "the Second Circuit requires district courts to separately analyze [NYCHRL claims] and construe their provisions more liberally than the federal or state law-based claims", "the NYCHRL is not a general civility code, and a defendant is not liable if the plaintiff fails to prove the conduct is caused at least in part by discriminatory . . . motives or if the defendant proves the conduct was nothing more than petty slights or trivial inconveniences". Mazur v. N.Y.C. Dep't of Educ., No. 12 Civ. 0687 (AT), 2014 WL 4651943, at *17 (S.D.N.Y. Oct. 24, 2014) (quotation marks omitted); see also Acosta, 2012 WL 1506954, at *6, *8; Sosa, 2013 WL 6569913, at *6. In other words, while the NYCHRL is more plaintiff-friendly than Title VII, the ADEA and the NYSHRL, like its federal and state counterparts, misconduct is actionable under the NYCHRL only where it is motivated by a protected characteristic and reaches a certain level of severity. Therefore, because Plaintiff has failed to raise an inference that she was discriminated against "because of" a protected characteristic (see supra Section I.A-B) and has pleaded nothing more than "petty slights and trivial inconveniences" (see supra Section I.C), her NYCHRL claims must also be dismissed. See Sosa, 2013 WL 6569913, at *6-7 (dismissing plaintiff's hostile work environment claim under the NYCAC (i.e., the NYCHRL) and commenting, "[T]he NYCAC is only plaintiff-friendly to a point. . . . If the conduct at issue consists of nothing more than what a reasonable victim of discrimination would consider petty

23

slights and trivial inconveniences, then the defendant should not be held liable.  The statements

cited in [plaintiff's] complaint ['You're so street' and 'You look like Urckle'] do not approach

the level of an actionable hostile work environment claim under the NYCAC. . . .   The short

litany of a few incidents recited by [plaintiff] does not describe a work environment that is

hostile as a matter of law, even under the especially broad NYCAC" (internal quotation marks

and citations omitted)); <u>Acosta</u>, 2012 WL 1506954, at *6, *8 ("Plaintiff's NYCHRL

employment discrimination claim fails under . . . <u>Twombly/Iqbal</u> for the same reason as its

federal and state counterparts—i.e., the absence of allegations connecting the purported adverse

employment actions to plaintiff's race [plaintiff alleged merely that he was Hispanic and the

individual defendants were white]. . . . Accordingly, even under the NYCHRL's liberal

construction, plaintiff's employment discrimination claim under the NYCHRL is dismissed.");

<u>see also</u> <u>Lawless</u>, 487 Fed. App'x at 618 (dismissing NYCHRL claims along with federal

discrimination claims and commenting, "[E]ven under the broad and liberal construction of the

NYCHRL, we find them to be without merit" (citations omitted)).

    At the very least, the Court should decline to exercise supplemental jurisdiction

over Plaintiff's NYCHRL claims because the federal (and NYSHRL) claims are properly

dismissed.  <u>See</u> <u>Henry</u>, 18 F. Supp. 3d at 413-14 (declining to "invest[] judicial resources

necessary to resolve" plaintiff's NYCHRL claims once federal and NYSHRL claims were

dismissed and, therefore, dismissing plaintiff's NYCHRL claims without prejudice); <u>see</u>

<u>also</u> <u>Ivanov v. N.Y.C. Transit Auth.</u>, No. 13 Civ. 4280 (PKC), 2014 WL 2600230, at *7-8

(S.D.N.Y. June 5, 2014) (declining to exercise supplemental jurisdiction over plaintiff's state-

law claims where plaintiff's federal-law claims were dismissed).

**III.     Dismissal of the Complaint Should Be with Prejudice.**

    Given that Plaintiff had—and declined—an opportunity to amend the Complaint, dismissal of the Complaint should be with prejudice.  Indeed, Plaintiff refused to amend the Complaint following submission of a pre-motion conference letter, which outlined the various deficiencies in the Complaint and which counsel for Plaintiff admits to considering. (See Tr. 2:22-3:20; see also supra p. 7 n.8.)  In such circumstances, dismissal with prejudice is appropriate, as the only reasonable inference is that Plaintiff is unable to add the missing (and necessary) allegations in good faith consistent with Rule 11 of the Federal Rules of Civil Procedure.  See, e.g., Rosner v. Star Gas Partners, L.P., 344 Fed. App'x 642, 644-45 (2d Cir. 2009) (holding that district court did not abuse its discretion in dismissing complaint with prejudice where "[t]he district court gave plaintiffs-appellants the opportunity to amend the [c]omplaint after a pre-motion telephone conference where the defendants described their arguments in favor of dismissal [and p]laintiffs-appellants declined to do so"); see also Wesleyan Methodist Church of Canisteo v. Village of Canisteo, 792 F. Supp. 2d 667, 674 (W.D.N.Y. 2011) (dismissing action with prejudice and commenting, "[T]he Court gave Plaintiff the opportunity to amend the Complaint to include [the missing] allegation . . . .  However, Plaintiff declined the Court's offer, which suggests that Plaintiff cannot in good faith assert [that allegation]").

## CONCLUSION

For the foregoing reasons, this Court should dismiss Plaintiff's entire Complaint with prejudice.

December 15, 2014

Respectfully submitted,

CRAVATH, SWAINE & MOORE LLP

by _____
                    Stuart W. Gold
                    Rachel G. Skaistis
                    Lauren R. Kennedy

Worldwide Plaza
825 Eighth Avenue
New York, NY 10019
(212) 474-1000
sgold@cravath.com

*Defendant pro se*

26