**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

MIREILLE MESIAS,

                              Plaintiff,

           v.

CRAVATH, SWAINE & MOORE LLP,

                              Defendant.

Case No. 14-cv-7070 (PAC)

# REPLY BRIEF IN FURTHER SUPPORT OF DEFENDANT'S
# MOTION TO DISMISS PLAINTIFF'S COMPLAINT

Rachel G. Skaistis
Lauren R. Kennedy
CRAVATH, SWAINE & MOORE LLP
825 Eighth Avenue
New York, NY 10019
(212) 474-1000

*Defendant pro se*

February 17, 2015

**TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ................................................................................................. ii

ARGUMENT ........................................................................................................................1

I. The Complaint Fails To State a Claim for National Origin Discrimination. .......................1

II. The Complaint Fails To State a Claim for Age and/or Gender Discrimination ..................4

III. The Complaint Fails To Plead a Hostile Work Environment. ...........................................8

CONCLUSION ...................................................................................................................11

# TABLE OF AUTHORITIES

**Cases**                                                 **Page(s)**

Burch v. Pioneer Credit Recovery, Inc., 551 F.3d 122 (2d. Cir. 2008) ........................................3

Carlton v. Mystic Transp., Inc., 202 F.3d 129 (2d Cir. 2000)....................................................5, 8

Cruz v. Coach Stores, Inc., 202 F.3d 560 (2d Cir. 2000).........................................................3, 9

Dhar v. N.Y.C. Dep't of Transp., 2014 WL 4773965 (E.D.N.Y. Sept. 24, 2014) .........................7

Feingold v. New York, 366 F.3d 138 (2d Cir. 2004)......................................................................9

Grant v. Rochester City Sch. Dist., 2013 WL 3105536 (W.D.N.Y. June 18, 2013) ......................8

Haggood v. Rubin & Rothman, LLC, 2014 WL 6473527 (E.D.N.Y. Nov. 17, 2014)................3, 6

In re Bristol-Myers Squibb Sec. Litig., 312 F. Supp. 2d 549 (S.D.N.Y. 2004) .............................3

Jones v. Capital Cities / ABC Inc., 168 F.R.D. 477 (S.D.N.Y. 1996) ...........................................7

Kearney v. ABN AMRO, Inc., 738 F. Supp. 2d 419 (S.D.N.Y. 2010)............................................5

Lee v. N.Y.S. Dep't of Health, 2001 WL 34031217 (S.D.N.Y. Apr. 23, 2001) .............................7

Lessambo v. PricewaterhouseCoopers, L.P., 2010 WL 3958787 (S.D.N.Y.
    Sept. 27, 2010) .......................................................................................................................10

Lopez v. Guardian Serv. Indus. Inc., 2012 WL 463958 (S.D.N.Y. Feb. 10, 2012) .......................7

Lorentzen v. Curtis, 18 F. Supp. 2d 322 (S.D.N.Y. 1998)............................................................2

McIntyre v. Manhattan Ford, Lincoln-Mercury, Inc., 175 Misc. 2d 795 (N.Y.
    Sup. Ct. 1997) .........................................................................................................................9

Meritor Sav. Bank v. Vinson, 477 U.S. 57 (1986)........................................................................9

Owens v. N.Y.C. Housing Auth., 934 F.2d 405 (2d Cir. 1991) ....................................................6

Papalia v. Milrose Consultants, Inc., 2011 WL 6937601 (S.D.N.Y. Dec. 29, 2011) ....................5

Raniola v. Bratton, 243 F.3d 610 (2d Cir. 2001).........................................................................9

Richardson v. New York, 180 F.3d 426 (2d Cir. 1999)..............................................................10

Rivoli v. Gannett Co., Inc., 327 F. Supp. 2d 233 (W.D.N.Y. 2004).............................................7

Rodriguez v. Hudson Square Pharmacy, LLC, 2012 WL 3195554 (S.D.N.Y. Aug. 2, 2012) ...................................................................................................7, 8

Roff v. Low Surgical & Med. Supply, Inc., 2004 WL 5544995 (E.D.N.Y. May 11, 2004) ..............................................................................................................3

Santana v. City of Ithaca, 2013 WL 1855829 (N.D.N.Y. May 1, 2013) .......................................9

Schreiber v. Worldco, LLC, 324 F. Supp. 2d 512 (S.D.N.Y. 2004) ..............................................6

Sethi v. Narod, 12 F. Supp. 3d 505 (E.D.N.Y. 2014) ....................................................................6

Thompson v. ABVI Goodwill Servs., 2013 WL 505491 (W.D.N.Y. Feb. 8, 2013) aff'd 531 Fed App'x 160 (2d Cir. 2013) ........................................................... 5, 6, 8

Tomka v. Seiler Corp., 66 F.3d 1295 (2d Cir. 1995) .....................................................................9

**ARGUMENT**

Plaintiff—who complains of discrimination based on her national origin, age and gender, and of a hostile work environment—has submitted papers in response to Defendant's motion to dismiss that are an "opposition" in name only. Plaintiff does not address (let alone dispute) the cases cited in Defendant's opening brief or many of Defendant's most crucial arguments; nor does Plaintiff offer an opposing view of the relevant law. Instead, Plaintiff repeats the allegations of the Complaint (at times, inaccurately) and insists those allegations are enough. Plaintiff's conclusory arguments and mischaracterization of the Complaint, however, cannot cure the legal deficiencies of the claims she seeks to assert.

**I.     The Complaint Fails To State a Claim for National Origin Discrimination.**

The Complaint does not allege that Cravath took any adverse action against Plaintiff "because of" her Haitian national origin, and therefore it fails to state a claim for national origin discrimination. (See Opening Brief ("Br.") at 7-13, 22-24.)[1] Specifically, despite invoking disparate treatment language (see Complaint ¶¶ 13, 23), the Complaint does not adequately allege that any more-favorably treated, non-Haitian colleague was "similarly situated" to Plaintiff (see Br. at 11-13 & n.11). And the Complaint's allegation that Plaintiff was Cravath's "only" Haitian Word Processing Specialist is legally insufficient. (See id. at 9-11.)

In response, Plaintiff does not challenge Defendant's statement of the law (indeed, Plaintiff fails to cite a single case in support of her national origin claim). She merely asserts, in conclusory fashion, that (1) "Defendant's discriminatory motive was sufficiently alleged" by the claim that Plaintiff received "false written warnings" and accusations "while her

---

[1] In its opening papers, Defendant explained that Plaintiff's claims fail, whether under Title VII, the ADEA, NYSHRL or NYCHRL. (See Br. at 7-24.) Plaintiff's opposition papers do not discuss these statutory schemes separately, implicitly acknowledging that the outcome is the same whether the Court applies federal, state or city law.

similarly situated non-Haitian colleagues [did] not"; and (2) "Cravath's disparate hiring policy" evidences national origin discrimination against Plaintiff. (Opposition Brief ("Opp.") at 4-5.)

One problem with Plaintiff's position is that nowhere does the Complaint actually allege that a similarly situated, non-Haitian colleague was treated more favorably than Plaintiff. Plaintiff directs the Court to Paragraphs 23 and 24 of the Complaint (see Opp. at 5), but the allegation cannot be found there. As written, Paragraph 23 alleges that Plaintiff received an "unjustified written warning" while "non-Haitian, similarly situated colleges who had not committed similar alleged errors, were not reprimanded in any way". (Complaint ¶ 23.) Colleagues who did "not" commit the same errors as Plaintiff cannot be "similarly situated". (See Br. at 13-14 n.11.) The allegation in Paragraph 24 (that Plaintiff was wrongly reprimanded for a document generated by a non-Haitian colleague) amounts to nothing more than a claim that Plaintiff was treated unfairly while being the only Haitian Word Processing Specialist at Cravath—a theory of liability that courts in this Circuit have repeatedly rejected. (See id. at 11.)

Apparently realizing that the Complaint is deficient as drafted, Plaintiff asks (in a footnote) that the Court "recognize" Paragraph 23 to state that Plaintiff's non-Haitian colleagues "had committed similar errors" or, alternatively, that the Court grant Plaintiff permission to amend the Complaint in this limited way. (Opp. at 5 n.1 (emphasis added).) First, the Complaint must be read as drafted—not as Plaintiff wishes it were drafted. See, e.g., Lorentzen v. Curtis, 18 F. Supp. 2d 322, 332 (S.D.N.Y. 1998) ("This Court can only read the complaint as written, and as written, [the allegation] fails."). Second, the Court already offered—and Plaintiff declined—the opportunity to amend, even though Defendant explained in its pre-motion conference letter that the Complaint did not raise the necessary causal inference, and the Court warned Plaintiff to seek amendment at the pre-motion conference or not at all. (See Br. 6-7

& n.8, 25); see also In re Bristol-Myers Squibb Sec. Litig., 312 F. Supp. 2d 549, 554, 570 (S.D.N.Y. 2004). Third, and most important, the amendment requested by Plaintiff would be futile: nowhere in the Complaint does Plaintiff offer any factual amplification concerning her allegedly "similarly situated" "non-Haitian" colleagues, a fatal shortcoming that Defendant highlighted in its opening brief (see Br. at 11-13 & n.11), and one Plaintiff's Opposition ignores.[2] See Burch v. Pioneer Credit Recovery, Inc., 551 F.3d 122, 126 (2d. Cir. 2008) (affirming denial of leave to make futile amendment).

Plaintiff summarizes six other paragraphs of the Complaint, but she again fails to explain how those paragraphs adequately allege national origin discrimination—and they do not for the reasons stated in Defendant's opening papers.

- Paragraphs 8-9: In these paragraphs, Plaintiff claims that she was the only Haitian Word Processing Specialist at Cravath. Plaintiff does not acknowledge—let alone refute—clear case law showing that this allegation is insufficient to plead a discrimination claim. (See Br. at 9-11.)

- Paragraph 13: Paragraph 13 alleges that Plaintiff received less favorable treatment related to vacation scheduling than "a non-Haitian colleague", but nowhere does it allege that this colleague was "similarly situated" to Plaintiff, let alone contain specific facts showing as much. (See Br. at 11-13; see also supra at 3 n.2.)

- Paragraphs 14-15: These paragraphs describe the recurring computer troubles Plaintiff experienced—not, as Plaintiff suggests, that Cravath "never fixed

---

[2] Not only does Plaintiff fail to address this point, the cases cited by Plaintiff elsewhere in her Opposition themselves make clear that Plaintiff was required to plead specific facts showing that her alleged comparators were similarly situated. See Haggood v. Rubin & Rothman, LLC, 2014 WL 6473527, at *12 (E.D.N.Y. Nov. 17, 2014) (dismissing discrimination claim where, among other things, complaint was "entirely devoid of any details regarding the purported comparators"); Roff v. Low Surgical & Med. Supply, Inc., 2004 WL 5544995, at *5 (E.D.N.Y. May 11, 2004) (dismissing discrimination claim where, among other things, plaintiff identified one alleged comparator but "fail[ed] to allege that she was otherwise similarly situated in all material respects with that other individual"); Cruz v. Coach Stores, Inc., 202 F.3d 560, 568 (2d Cir. 2000) (affirming grant of summary judgment in favor of defendant where plaintiff did "not establish[] that she was similarly situated to the non-Hispanic employees whose violations . . . [defendant] allegedly overlooked").

3

[Plaintiff's] computer problems". (Opp. at 5.) But even if the Complaint could be read to allege that Cravath refused to fix Plaintiff's computer[3]—again, an allegation found nowhere in the Complaint—there is absolutely no suggestion that this refusal was "because of" Plaintiff's national origin.

- Paragraph 19: This paragraph alleges that Cravath "failed to reward" Plaintiff Bonus Personal Days "despite the fact that she met the requirements for the bonus". As a preliminary matter, Plaintiff was never denied a bonus; Cravath issued the bonus, albeit after a short delay, as the very same paragraph admits. (See Complaint ¶ 19.) Moreover, there is no allegation that the delay was "because of" Plaintiff's national origin. In fact, there is no allegation that the delay was remotely malicious: the Complaint labels it an "oversight". (Id.)

Lastly, in apparent reference to Defendant's point that even the Complaint suggests Plaintiff was terminated for non-protected reasons (see Br. at 17-18), Plaintiff argues that Defendant's "legitimate, non-discriminatory basis" for terminating Plaintiff "is simply pretext". (Opp. at 5-6.) While Defendant certainly believes it had a legitimate reason for terminating Plaintiff, at the pleading stage, Defendant was making a different point: the Complaint itself—that is Plaintiff, not Defendant—offers a legitimate non-discriminatory basis for Plaintiff's termination. Plaintiff does not (and cannot) deny that courts in this Circuit routinely dismiss complaints that offer legitimate, non-discriminatory reasons for the contested adverse employment action. (See Br. at 17-18.)[4]

**II.   The Complaint Fails To State a Claim for Age and/or Gender Discrimination.**

Plaintiff does not dispute that her age and gender discrimination claims rest on two comments (over the entire 10-year period in issue) allegedly made by her supervisor—one

---

[3] Elsewhere in her Opposition, Plaintiff characterizes the Complaint as alleging that her supervisor "purposefully fail[ed] to fix her computer at her work station" (Opp. at 9), which is a clear mischaracterization of what the Complaint actually alleges (see Complaint ¶¶ 14-15 (specifically acknowledging that "fixes were made", but stating that those "fixes" proved to be "temporary" and issues would "resurface")).

[4] That the Complaint contains legitimate, non-discriminatory reasons for Defendant's treatment of Plaintiff justifies dismissal of all Plaintiff's discrimination claims—not just her national origin claim. (See Br. at 17-18.)

4

supposedly uttered two years before Plaintiff's termination from Cravath, the other purportedly made more than three months before her discharge. Rather than address Defendant's cases showing that these alleged comments are classic stray remarks which are not probative of discrimination (see Br. at 14-16), Plaintiff makes general (and uncontroversial) statements about the relevant law without actually applying that law to the facts of her case (see Opp. at 6-9). Tellingly, Plaintiff does not cite a single case in which discrimination claims were sustained on facts remotely comparable to those alleged here.

First, Plaintiff notes that stray comments may be evidence of discrimination "when considered within the totality of all the evidence". (Opp. at 6 (quotation marks omitted).) While it is true that stray comments may "constitute additional evidence of . . . discrimination" when considered alongside other probative evidence, Thompson v. ABVI Goodwill Servs., 531 Fed. Appx. 160, 162 (2d Cir. 2013) (quotation marks omitted) (emphasis in original); see also Kearney v. ABN AMRO, Inc., 738 F. Supp. 2d 419, 430-31 (S.D.N.Y. 2010), Plaintiff ignores that the only evidence of discrimination alleged in the Complaint are the stray remarks themselves (see Br. at 4-6, 14, 21-22 n.15); there is no "other evidence" for the Court to consider.[5]

---

[5] Plaintiff's suggestion that the Court consider allegations such as "unsatisfactory evaluations" and "unjustified written warnings" (see Opp. at 9) is without merit. There is no indication that these incidents occurred "because of" a protected characteristic. (See Br. at 4-6.) That is not to say Plaintiff was required "to plead that age was the 'but for' reason for [her] termination" (Opp. at 9); it simply reflects the "axiomatic" proposition that mistreatment at work is actionable only when it occurs "because of" a protected trait (Br. at 7-8). Indeed, the very cases cited by Plaintiff illustrate the type of additional allegations Plaintiff was required (and failed) to make. See Carlton v. Mystic Transp., Inc., 202 F.3d 129, 135-36 (2d Cir. 2000) (age-related comment made "during the meeting regarding [plaintiff's] termination" "furnishe[d] support for [plaintiff's] prima facie case" "when considered within the totality of all the evidence", particularly that plaintiff's duties were given to two much younger employees); Papalia v. Milrose Consultants, Inc., 2011 WL 6937601, at *9, *11-12 (S.D.N.Y. Dec. 29, 2011) (comments indicative of age and gender discrimination where (1) plaintiff was replaced by a

Second, Plaintiff argues that the four factors routinely considered by courts in this Circuit (who made the remark, the timing, content and context of the remark)[6] demonstrate that the comments are indicative of discriminatory animus. (See Opp. at 7-9.) Presumably realizing that she has a significant "timing" problem (not to mention a "context" problem),[7] Plaintiff seeks to divert attention away from her October 2013 termination and focus on other (i.e., earlier in time) supposed adverse employment actions. In so doing, Plaintiff arguably fixes her "timing" problem, but fails to remedy the "context" problem and—even more fundamental—fails to point to legally cognizable adverse employment actions.

Plaintiff claims that the first alleged comment (made approximately two years before her termination) is evidence of discrimination because the comment was made "toward the end of 2011" and, "in late December 2011, . . . Defendant failed to reward Plaintiff" Bonus

---

younger male and (2) some of the comments were made "during [plaintiff's] reassignment" to a lower position and the other comments showed "sexism in the context of employment decisions relating to positions of importance"); Schreiber v. Worldco, LLC, 324 F. Supp. 2d 512, 515-16, 520-22 (S.D.N.Y. 2004) (comments probative of age discrimination where, among other things, defendant "explicitly referenced age" on multiple occasions when plaintiff asked why he was not offered higher compensation or particular job-training opportunities).

[6] Although Plaintiff cites four cases that embody this test, she does not describe the facts of those cases or seek to apply their holdings to her Complaint. (See Opp. at 7.) That is understandable, given that three of the cases come out favorably for Defendant, see Haggood, 2014 WL 6473527, *1-4, *10-11; Sethi v. Narod, 12 F. Supp. 3d 505, 538-45 (E.D.N.Y. 2014); Thompson v. ABVI Goodwill Servs., 2013 WL 505491, at *4-5 (W.D.N.Y. Feb. 8, 2013) aff'd 531 Fed App'x 160 (2d Cir. 2013), and the fourth is not factually analogous, see Owens v. N.Y.C. Housing Auth., 934 F.2d 405, 407, 410 (2d Cir. 1991) (finding supervisors' comments "raise[d] a genuine issue of fact on the issue of pretextuality" where, among other things, supervisor who requested plaintiff's suspension specifically told plaintiff that "her 'problems' had to do with her age and entry into menopause").

[7] Plaintiff does not (and cannot) dispute that the two-year gap between the first comment and her termination is too long to find the remark suggestive of discriminatory discharge. (See Br. at 15-16.) The same is true for the second comment (which was uttered, if at all, more than three months before Plaintiff's termination). (See id.) Plaintiff's citation to Schreiber, 324 F. Supp. 2d 512, supports Defendant's point. See id. at 522-23 (finding that "arguably [] stray remark[]" made "three or four months" before plaintiff's termination could be "evidence of discrimination" when considered "collectively and in combination" with other evidence).

Personal Days. (Opp. at 8.) But the delay in Plaintiff receiving her bonus (see supra at 4) is not an adverse employment action. See, e.g., Lopez v. Guardian Serv. Indus. Inc., 2012 WL 463958, at *4 n.4 (S.D.N.Y. Feb. 10, 2012) ("Since [plaintiff] does not dispute that he eventually received all of the compensation he was entitled to, . . . his claims regarding paycheck inaccuracies ultimately reduce to paycheck delay claims. . . . Courts have consistently held that paycheck delays do not constitute an 'adverse employment action' for purposes of making a prima facie employment discrimination . . . claim."); Dhar v. N.Y.C. Dep't of Transp., 2014 WL 4773965, at *7 n.5 (E.D.N.Y. Sept. 24, 2014) (same). And even if it were, the Complaint does not allege that the comment was uttered in the context of the bonus decision (see Complaint ¶ 18), nor does the Complaint allege that the supervisor who supposedly made the comment had anything to do with delaying Plaintiff's bonus (see Br. at 5-6).[8]

Plaintiff links the second alleged comment to a "false accusation" made by her supervisor in a meeting immediately preceding the comment. (Opp. at 8.) This supposedly "false accusation", however, is not an adverse employment action, because it did not affect the terms and conditions of Plaintiff's employment.[9] See Rodriguez v. Hudson Square Pharmacy,

---

[8] Plaintiff argues that "discovery should be permitted to proceed on th[e] issue" of whether Plaintiff's supervisor "was instrumental" in the decision to delay Plaintiff's bonus. (Opp. at 8.) Discovery is not appropriate, because the shortcoming is not due to lack of evidence; the allegation is utterly missing from the Complaint. See Rivoli v. Gannett Co., Inc., 327 F. Supp. 2d 233, 246 (W.D.N.Y. 2004) ("Discovery would only be appropriate if plaintiff had stated a claim in the first place. . . . [T]he Court cannot supply crucial allegations that are missing from the complaint, and then allow plaintiff to engage in a fishing expedition in the hopes of turning up evidence to support those allegations."); Jones v. Capital Cities / ABC Inc., 168 F.R.D. 477, 480 (S.D.N.Y. 1996) (same).

[9] The Complaint alleges that Plaintiff was terminated for her many "continued errors"—not for any one particular error (let alone this specific "false accusation" of an error). (Complaint ¶ 26.) Thus, Plaintiff's effort to create an adverse employment action out of the accusation by implying it resulted in Plaintiff's subsequent termination (see Opp. at 9) should fail. See Lee v. N.Y.S. Dep't of Health, 2001 WL 34031217, at *14 (S.D.N.Y. Apr. 23, 2001) ("Plaintiff does not claim that she suffered any adverse consequences as a result of this probation report or that

LLC, 2012 WL 3195554, at *6 & n.13 (S.D.N.Y. Aug. 2, 2012) ("Plaintiff's termination is the only action by the employer that would qualify as an adverse employment action. . . . Because [plaintiff's supervisor's] accusation did not result in any consequence, it does not qualify as an adverse employment action."). But even if the Court labeled this "false accusation" an "adverse employment action", Plaintiff still would not prevail. While the alleged comment may have been made close in time to the "false accusation", it was not made in regards to, or in the context of, that accusation—rather, it was made after the relevant meeting had ended. (See Complaint ¶ 24.) Moreover, courts in this Circuit have repeatedly found one stray remark insufficient to state a claim for discrimination. See, e.g., Carlton, 202 F.3d at 135 ("[E]vidence of one stray comment by itself is usually not sufficient proof to show age discrimination."); Thompson, 531 Fed. Appx. at 162 (a stray comment may constitute "additional evidence" of discrimination, but "by itself is usually not sufficient" (emphasis in original) (quotation marks omitted)); Grant v. Rochester City Sch. Dist., 2013 WL 3105536, at *6 (W.D.N.Y. June 18, 2013) ("It is well resolved that isolated derogatory remarks by a decisionmaker alone do not rise to an inference of discrimination.") (quotation marks omitted); (see also Br. at 15-16.)

**III.   The Complaint Fails To Plead a Hostile Work Environment.**

Defendant demonstrated in its opening papers that, even if the Complaint raised the necessary causal inference (and it does not), Plaintiff's hostile work environment claim would nevertheless fail, because the Complaint does not describe "severe" or "pervasive" misconduct. (See Br. at 18-22.) Plaintiff does not dispute that she was required to plead conduct that was objectively "severe or pervasive". (See Opp. at 10.) She claims that she met this burden through the "totality of circumstances". (Id. at 10-12.) The very cases cited by Plaintiff,

---

any further disciplinary actions were taken against her as a result of this report. Therefore, plaintiff has failed to establish that [her supervisor's] probation report constituted an adverse employment action.").

8

however, prove that the Complaint's allegations—even when read with all favorable inferences and considered in "totality"—come nowhere close to pleading a hostile work environment.

Plaintiff cites a number of cases in an effort to show that her hostile work environment allegations are sufficient, but these cases are not factually comparable, see, e.g., Santana v. City of Ithaca, 2013 WL 1855829, at *1-3 (N.D.N.Y. May 1, 2013) (plaintiff assigned disproportionate work load and required to perform tasks not demanded of other similarly situated employees, while being subjected to "racially-charged" derogatory language), and most involve much more extreme misconduct than Plaintiff has alleged here. For example, many of the cases relied upon by Plaintiff involve egregious physical acts that are blatantly "severe". See, e.g., Tomka v. Seiler Corp., 66 F.3d 1295, 1302, 1305 (2d Cir. 1995) (hostile work environment claim included multiple allegations of rape by three individuals); Meritor Sav. Bank v. Vinson, 477 U.S. 57, 60 (1986) (hostile work environment claim included allegations that plaintiff had an unwelcome sexual relationship with her supervisor and was "forcibly raped [by him] on several occasions"); Raniola v. Bratton, 243 F.3d 610, 621 (2d Cir. 2001) (plaintiff subjected to "serious public threat of physical harm"). Plaintiff's cases also involve frequent mistreatment that is plainly "pervasive". See, e.g., McIntyre v. Manhattan Ford, Lincoln-Mercury, Inc., 175 Misc. 2d 795, 797, 802-04 (N.Y. Sup. Ct. 1997) (plaintiff alleged "17 specific incidents", including two instances of physical assault, plus "constant" sexually-charged verbal abuse, which "occurred very frequently (some were daily) until the day she was terminated"); Cruz, 202 F.3d at 570-71 (plaintiff adduced evidence that a supervisor "repeatedly" and "constantly" made racially-charged remarks and backed plaintiff against a wall when speaking to her); Feingold v. New York, 366 F.3d 138, 150-51 (2d Cir. 2004) (plaintiff showed that he "was singled out . . . on an 'almost daily' basis on account of his religion").

Plaintiff seeks to bolster her plainly deficient hostile work environment claim by pointing to allegations that have no connection whatsoever to a protected characteristic—namely, that she received "false warnings", "accusations" and "reviews"; was "lied" about; did not receive vacation time[10] or Bonus Personal Days; and was terminated "under [an] unequal disciplinary standard". (Opp. at 11-12.) As already explained, the Complaint does not suggest these incidents occurred "because of" a protected characteristic, and thus they are not properly considered as part of Plaintiff's hostile work environment claim. (See Br. at 21-22 n.15.)[11] The only two incidents offered by Plaintiff with a connection to a protected trait—the alleged "menopausal women" comments—are insufficient as a matter of law, even according to Plaintiff's own cases. See, e.g., Lessambo v. PricewaterhouseCoopers, L.P., 2010 WL 3958787, at *11 (S.D.N.Y. Sept. 27, 2010) ("[Plaintiff] reported that . . . one of his supervisors . . . made three offensive remarks about his national origin. This is insufficient to support a hostile work environment claim."). And even if the Court factored in every single allegation in the Complaint—including those with absolutely no connection to a protected characteristic—the conduct described is still not sufficiently severe or pervasive. (See Br. at 21-22.) Plaintiff's citation to inapposite case law (see supra at 9) does not change this conclusion.

---

[10] Plaintiff's supervisor did not "fail[] to award her vacation time" (Opp. at 11): Plaintiff received all of her allotted vacation days; her supervisor simply denied her request to "borrow" additional days (Complaint ¶ 13).

[11] While courts should "consider the totality of circumstances", this does not necessarily include "all of the facts alleged" in the Complaint. (See Opp. at 10.) Courts may consider only incidents (including facially-neutral incidents) that can be said to have occurred "because of" a protected characteristic. (See Br. at 21-22 n.15.) Plaintiff does not disagree with this statement of the law. To the contrary, at least one of the cases cited by Plaintiff applies this rule to reject a hostile work environment claim. See Richardson v. New York, 180 F.3d 426, 440 (2d Cir. 1999) ("Of the fifteen incidents about which [plaintiff] complains, only three have any racial overtones whatsoever, and these . . . are isolated, mild, and cannot, under any objective standard, suffice to create a hostile working environment.").

## CONCLUSION

For the foregoing reasons and the reasons provided in Defendant's Opening Brief, this Court should dismiss Plaintiff's Complaint in its entirety with prejudice.

February 17, 2015

                Respectfully submitted,

                CRAVATH, SWAINE & MOORE LLP

by   */s/ Rachel G. Skaistis /LK*
                Rachel G. Skaistis
                Lauren R. Kennedy

                Worldwide Plaza
                825 Eighth Avenue
                New York, NY 10019
                (212) 474-1000
                rskaistis@cravath.com

                *Defendant pro se*