USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 5-4-15

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------- x
MIREILLE MESIAS,

     Plaintiff,

  -against-

                14 Civ. 7070 (PAC)

CRAVATH, SWAINE & MOORE LLP,    **OPINION & ORDER**

     Defendant.
--------------------------------------------------------------x

HONORABLE PAUL A. CROTTY, United States District Judge:

Plaintiff Mireille Mesias, a 59-year-old Haitian female, sues her former employer, Cravath, Swaine & Moore LLP ("Cravath"), alleging gender, national origin, and age discrimination, as well as a hostile work environment, in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), the Age Discrimination in Employment Act of 1967 ("ADEA"), New York State Executive Law § 290, *et seq.*, ("NYSHRL"), and New York City Administrative Code § 8-101, *et seq.* ("NYCHRL").

Cravath moves to dismiss the Complaint, pursuant to Fed. R. Civ. P. 12(b)(6), for failure to state a claim.

For the reasons set forth below, Cravath's motion is GRANTED with respect to Plaintiff's federal claims. The Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims.

## BACKGROUND

Plaintiff worked as a Word Processing Specialist at Cravath for 16 years, from March 1997 until October 2013. Compl. ¶¶ 7-8, 26. During that time, Plaintiff "was the only one of her similarly situated colleagues who was Haitian." *Id.* ¶ 8. Her Complaint alleges a long list of

1

slights and grievances which occurred during the last 10 years of her career as a word processor at the Cravath firm.

In November 2003, Lenny Tropp, Plaintiff's supervisor, issued her a written warning regarding her failure to "communicate a piece of information" to an assistant supervisor. *Id.* ¶ 11. Plaintiff had "already relayed th[e] information" to a different supervisor, but Tropp "blamed [Plaintiff] and refused to listen to her explanation." *Id.* Plaintiff subsequently received a "Partially Meets Standards" rating for a portion of her 2003 year-end review; the rating was based—at least in part—on the November 2003 incident. Plaintiff disputed the review by writing "respectfully disagree" on the bottom of the page. *Id.* ¶ 12.

In December 2004, Plaintiff sought to "borrow" two vacation days from the 2005 year for a vacation that she had planned. She discussed her request with a non-Haitian colleague, who informed her that "borrowing vacation days was standard practice," and that the colleague's request to do so had been approved in the past. *Id.* ¶ 13. Tropp, however, denied Plaintiff's request to "borrow" the two days. *Id.*

Beginning in 2006, Plaintiff had "several issues" with her work computer. She informed Tropp and George Polley, her assistant supervisor, that certain computer applications were not working properly. *Id.* ¶ 14. Though the computer problems would "be fixed for a few days," the problems would "always resurface," inhibiting Plaintiff's ability to properly perform her job. *Id.* When Tropp issued Plaintiff a warning "related to these computer issues," Plaintiff requested a meeting with Barbara Zappavigna, the director of the Document Processing Department. During the meeting, Tropp "lied and told Zappavigna that [Plaintiff] had never informed him" of her computer problems. *Id.*

Plaintiff continued to have computer problems through 2007. She informed Tropp and Polley of the problems, but, as before, received only "temporary fixes" to the problems. *Id.* ¶ 15. Plaintiff was again issued a "Partially Meets Standards" rating on a performance review.[1] Plaintiff had been informed that if she did not agree with her evaluation, she was not required to sign it; accordingly, she refused to sign the review. *Id.* Subsequently, in Plaintiff's 2007 year-end review, Tropp indicated that Plaintiff was not "receptive to criticism." The review also stated that Plaintiff's "accuracy and judgment have not met the Department's standard," and that she failed to "consistently look[] over documents." *Id.* Following this review, at the end of 2007, Plaintiff joined an Employment Assistance Program ("EAP"). *Id.*

Plaintiff participated in the EAP from 2008 through 2009, during which time "Tropp generally left [Plaintiff] alone." *Id.* ¶ 16. In November 2010, Plaintiff wrote to Rita Wilson, an assistant supervisor, complaining that the "distribution of work assignments unfairly affected [Plaintiff]." *Id.* ¶ 17. Following Plaintiff's complaint, the "scrutiny leveled against" Plaintiff's work performance increased. *Id.* At the end of 2011, after a staff meeting, Tropp stated in front of Plaintiff and several of Plaintiff's colleagues, "[T]his is the last time I'm working with menopausal women!" *Id.* ¶ 18.

In December 2011, Cravath failed to award Plaintiff an Attendance Incentive Bonus, even though she qualified for the bonus. Plaintiff "informed Tropp of this oversight," but Tropp responded that "there was nothing he could do about it." *Id.* ¶ 19. Plaintiff was eventually able to resolve the issue with the help of another Cravath employee. *Id.*

---

[1] It is unclear from the Complaint when this review occurred. *See id.*

3

Plaintiff's 2011 year-end review contained a negative performance evaluation.[2] *Id.* ¶ 20. Plaintiff submitted a rebuttal, which "again highlighted" the computer problems that affected her ability to perform her job. She did not receive any response from her superiors regarding her rebuttal. *Id.*

In 2012, Cravath hired another Haitian employee. That individual, however, was "terminated before the end of the 3-month probationary period." *Id.* ¶ 9.

On October 26, 2012, Plaintiff was put on probation for committing a "minor error involving the transcribing of a tape." *Id.* ¶ 21. Plaintiff submitted a memorandum to Lina Maglara, the director of Human Resources, "explaining why probation was wrongful and punitive." *Id.* Maglara, however, "moved forward in imposing" a three-month probationary period. *Id.*

Following another incident in May 2013, Tropp issued Plaintiff a written warning, despite the fact that Plaintiff had followed "the Department's standard protocol on the issue at hand."[3] *Id.* ¶ 23. Plaintiff's non-Haitian, similarly situated colleagues who had committed "similar alleged errors" were "not reprimanded in any way."[4] *Id.*

On June 27, 2013, during a meeting between Plaintiff, Tropp, and Polley, Tropp accused Plaintiff of "making an error related to a log card." *Id.* ¶ 24. The log card, however, "had been generated by another, non-Haitian employee." At the meeting, Plaintiff "defended herself" and stated that she "felt she was being harassed." *Id.* As the three exited the room, Plaintiff overheard Tropp tell Polley that Tropp was "tired of working with 'menopausal women.'" *Id.*

---

[2] The Complaint does not specify the content of the evaluation, but merely alleges that the performance evaluation was "wrongful." *Id.* ¶ 20.
[3] The Complaint does not describe the incident, but merely states that Plaintiff "received another unjustified written warning from Tropp." *Id.* ¶ 23.
[4] The Complaint states that Plaintiff's "non-Haitian, similarly situated colleges [sic] who had *not* committed similar alleged errors, were not reprimanded." *Id.* (emphasis added). The word "not" before "committed" appears to be a typographical error. *See* Opp. Mtn., at 5 n.1.

4

In September 2013, Tropp accused Plaintiff of failing to revise a document, even though Plaintiff had already done so and had submitted her revisions to an assistant supervisor for review. *Id.* ¶ 25. On October 3, 2013, Plaintiff was terminated from Cravath. *Id.* ¶ 26. During Plaintiff's exit interview, Tropp and Maglara stated that Plaintiff was being fired due to her "continued errors." Although Plaintiff reminded Tropp of the computer problems she had experienced, neither Maglara nor Tropp "acknowledge[d] [her] defense." *Id.*

## DISCUSSION

### I. Legal Standard

#### A. Motion to Dismiss

A motion to dismiss for failure to state a claim cannot be granted if the Complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face if it includes "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In ruling on a motion to dismiss, the court "merely . . . assess[es] the legal feasibility of the complaint"; it does not "assay the weight of the evidence which might be offered in support thereof." *Lopez v. Jet Blue Airways*, 662 F.3d 593, 596 (2d Cir. 2011) (citation omitted).

#### B. Discrimination Claims

Title VII prohibits discrimination based on an employee's "race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2. The ADEA protects employees from discrimination on the basis of age. *See* 29 U.S.C. § 623(a)(1). To state a prima facie case of disparate treatment under Title VII or the ADEA, a plaintiff must allege that: (1) she is a member of a protected

5

class, (2) she was qualified for the position she held, (3) she suffered an adverse employment action, and (4) the action occurred under circumstances giving rise to an inference of discrimination. *Holcomb v. Iona Coll.*, 521 F.3d 130, 138 (2d Cir. 2008); *Caskey v. Cnty. of Ontario*, 560 Fed. Appx. 57, 58 (2d Cir. 2014). Circumstances that may "give rise to an inference of discriminatory motive" include "actions or remarks made by decisionmakers that could be viewed as reflecting a discriminatory animus," as well as "preferential treatment given to employees outside the protected class." *Chertkova v. Conn. Gen. Life Ins. Co.*, 92 F.3d 81, 91 (2d Cir. 1996).

A "discrimination complaint need not allege facts establishing each element of a prima facie case of discrimination to survive a motion to dismiss," but must, "at a minimum assert nonconclusory factual matter sufficient to nudge its claims across the line from conceivable to plausible." *EEOC v. Port Auth. of N.Y. & N.J.*, 768 F.3d 247, 254 (2d Cir. 2014) (citations omitted). Accordingly, courts in this District have "held that the elements of a prima facie case provide an outline of what is necessary to render a plaintiff's employment discrimination claims for relief plausible." *Johnson v. Morrison & Foerster LLP*, 2015 U.S. Dist. LEXIS 24008, at *7 (S.D.N.Y. Feb. 26, 2015) (citations omitted).

NYSHRL claims are analyzed using the same framework as Title VII claims. *See Aiossa v. Bank of Am., N.A.*, 538 Fed. Appx. 8, 10 (2d Cir. 2013). NYCHRL claims, on the other hand, are reviewed "independently from and 'more liberally' than their federal and state counterparts." *Loeffler v. Staten Island Univ. Hosp.*, 582 F.3d 268, 278 (2d Cir. 2009).

**II. Analysis**

Cravath does not contest that Plaintiff has adequately pled the first three prima facie elements of her Title VII and ADEA discrimination claims. Instead, Cravath argues that the

6

Complaint fails to "support[] the plausible inference that Plaintiff was discharged from Cravath because of" her national origin, gender, or age. Mtn., at 14.

### A. National Origin Discrimination Claims

The Complaint sets forth a number of allegations that Plaintiff was treated unfairly by Cravath. Only five of these allegations, however, relate in any way to Plaintiff's national origin: (1) Plaintiff was the "only one of her similarly situated colleagues who was Haitian"; (2) another Haitian employee was "terminated before the end of [Cravath's] 3-month probationary period"; (3) Cravath permitted Plaintiff's non-Haitian colleague to "borrow" vacation days, but did not allow Plaintiff to do so; (4) Plaintiff received a written warning from Tropp, while her similarly situated, non-Haitian colleagues who had committed errors similar to Plaintiff's "were not reprimanded"; and (5) Tropp accused Plaintiff of making an error that had actually been made by a non-Haitian employee. *See* Compl. ¶¶ 8-9, 13, 23-24. These allegations, even when viewed in the context of the rest of the Complaint, fail to plausibly allege an inference of national origin discrimination.

Plaintiff argues that the fact that she was the "only Haitian employee in [her] position" indicates that Cravath followed a "disparate hiring policy." Opp. Mtn., at 5. Yet being the sole Haitian does not raise a plausible inference of discrimination. *See Ahmed v. Gateway Group One*, 2012 U.S. Dist. LEXIS 76528, at *5-6 (E.D.N.Y. June 1, 2012) (dismissing race and sex discrimination claims where plaintiff alleged that she "was the only Bangladeshi woman working as a taxi dispatcher" because employers are not required to hire employees "from each ethnicity group present in the employer's community"). Similarly, the fact that another Haitian's employment was terminated during the probationary period does not, without more, raise such an inference.

The allegation that a non-Haitian employee could "borrow" vacation days, while Plaintiff could not, also fails to render plausible an inference of discrimination. The Complaint alleges no facts demonstrating that Plaintiff was "similarly situated" to her non-Haitian colleague. *See Henry v. NYC Health & Hosp. Corp.*, 18 F. Supp. 3d 396, 408 (S.D.N.Y. 2014) (dismissing complaint where plaintiff failed to include "comparators" indicating that plaintiff was "similarly situated" to other employees). For example, Plaintiff has not alleged that she and her non-Haitian colleague worked in the same department, had the same job responsibilities, or had the same supervisors. Such allegations are necessary to render plausible the inference that Plaintiff's national origin, rather than any number of other considerations, played a role in Cravath's refusal to permit Plaintiff to "borrow" vacation days.

Plaintiff's claim that she received a written warning for certain conduct, while similarly situated, non-Haitian employees were not reprimanded, is likewise deficient because the Complaint contains none of the necessary factual context. *See EEOC*, 768 F.3d at 254. Plaintiff does not explain the content of the written warning or the circumstances under which she received it. She simply alleges that the warning was "unjustified" because she had "followed the Department's standard protocol on the issue at hand." Compl. ¶ 23. The Complaint does not define the "issue at hand," or describe the "similar errors" Plaintiff's colleagues made. Such conclusory allegations are insufficient to "nudge [Plaintiff's] claims across the line from conceivable to plausible." *See EEOC*, 768 F.3d at 254 (citations omitted).

The allegation that Tropp blamed Plaintiff for a mistake that was made by another employee also fails to give rise to an inference of discrimination. The only nexus between the allegation and Plaintiff's national origin is that the employee who made the mistake was not Haitian. Compl. ¶ 24. Nothing in the Complaint indicates that Tropp blamed Plaintiff for the

8

mistake *because of* her national origin. *See Kajoshaj v. N.Y. City Dep't of Educ.*, 543 Fed. Appx. 11, 14 (2d Cir. 2013) (dismissing complaint where, "although plaintiffs repeatedly assert[ed] that defendants" took certain actions "because of" plaintiffs' religion and national origin, plaintiffs "[did] not, for instance, assert that any defendant referenced their religion or national origin, much less that they did so in a derogatory manner").

### B. Gender and Age Discrimination Claims

Plaintiff also fails to adequately plead her gender and age discrimination claims. The Complaint sets forth two allegations regarding Plaintiff's age and gender: at "the end of 2011," Tropp stated in front of Plaintiff and several of her colleagues, "[T]his is the last time I'm working with menopausal women!'"; and on June 27, 2013, Plaintiff overheard Tropp say to Polley that "he was tired of working with 'menopausal women.'" Compl. ¶¶ 18, 24.

Remarks may raise an inference of discrimination if there is a nexus between the remarks and an adverse employment decision. *Zhang v. Barr Labs., Inc.*, 2000 U.S. Dist. LEXIS 6237, at *13 (S.D.N.Y. May 8, 2000). In determining whether a comment is "probative of discriminatory intent," courts consider four factors: "(1) who made the remark (i.e. a decision-maker, a supervisor, or a low-level co-worker); (2) when the remark was made in relation to the employment decision at issue; (3) the content of the remark . . . ; and (4) the context in which the remark was made (i.e. whether it was related to the decision-making process)." *Henry v. Wyeth Pharms., Inc.*, 616 F.3d 134, 149-50 (2d Cir. 2010).

Plaintiff does not sufficiently allege a connection between either of Tropp's comments and her termination. The first comment was made a year and a half before Plaintiff was fired, and the second was made more than three months before Plaintiff's termination.[5] Compl. ¶¶ 18,

---

[5] Plaintiff argues that Cravath's failure to award her an "Attendance Incentive Bonus" in December 2011 constituted an adverse employment action. Opp. Mtn., at 8. The action was not "adverse," however, because the Complaint

9

24, 26. The time lapse between the remarks and the adverse employment action suggests that the incidents were not related. *See Henry*, 616 F.3d at 149 ("The more remote and oblique the remarks are in relation to the employer's adverse action, the less they prove that the action was motivated by discrimination.") (citation omitted). Moreover, although Tropp was Plaintiff's supervisor both at the time he made the comments and at the time she was fired, the Complaint does not allege that the remarks were "related to the decision-making process" resulting in Plaintiff's termination. *See id.* Instead, Plaintiff was informed that her "continued errors were the reason for her dismissal." Compl. ¶ 26.

### C. Hostile Work Environment Claims

To plead a claim for hostile work environment under Title VII, a plaintiff must show: "(1) that the harassment was sufficiently severe or pervasive to alter the conditions of [her] employment, and (2) that a specific basis exists for imputing the objectionable conduct to the employer." *Alfano v. Costello*, 294 F.3d 365, 373 (2d Cir. 2002). An environment is hostile if "a reasonable person would have found it to be so" and "the plaintiff subjectively so perceived it." *Brennan v. Metro. Opera Ass'n, Inc.*, 192 F.3d 310, 318 (2d Cir. 1999). In determining whether the environment is hostile, courts consider the frequency and severity of the discriminatory conduct, whether it is "physically threatening or humiliating, or a mere offensive utterance," and whether it "unreasonably interferes with the employee's work performance." *Id.* at 319.

The allegations in the Complaint, which span a period of sixteen years, do not describe conduct so "severe or pervasive to alter the conditions of [Plaintiff's] employment." *See Alfano*,

---

asserts that Plaintiff ultimately received the bonus. Compl. ¶ 19. *Cf. Lopez v. Guardian Serv. Indus. Inc.*, 2012 U.S. Dist. LEXIS 18523, at *13 n.4 (S.D.N.Y. Feb. 10, 2012) ("Courts have consistently held that paycheck delays do not constitute an 'adverse employment action' for purposes of making a prima facie employment discrimination or retaliation claim.").

294 F.3d at 373. Instead, Plaintiff alleges that she was subjected to two inappropriate comments regarding her age and gender, that she was unable to "borrow" vacation days from the following year, that Cravath delayed in awarding her a bonus, and that she was blamed for various mistakes that were not her fault. These allegations do not rise to the level of a hostile work environment.

### D. State Law Claims

Because Plaintiff has failed to state a claim under Title VII or the ADEA, the Court declines to exercise supplemental jurisdiction over her NYSHRL and NYCHRL claims. *See Johnson v. Morrison & Foerster LLP*, 2015 U.S. Dist. LEXIS 24008, at *18-19 (S.D.N.Y. Feb. 26, 2015).

### CONCLUSION

Defendant's motion to dismiss the Title VII and ADEA claims is GRANTED, and the Complaint is dismissed without prejudice. The Court declines to exercise supplemental jurisdiction over the NYSHRL and NYCHRL claims.

Dated: New York, New York
      April 28, 2015

SO ORDERED

_____
PAUL A. CROTTY
United States District Judge